■ SUSAN GRAY, Appellant, v WALLMAN & KRAMER, Respondent-Appellant, and JULIENNE M. MICHEL, Respondent.—Appeal from order, Supreme Court, New York County (Harold Tompkins, J.), entered March 28, 1990, which, *inter alia,* granted the defendant Michel's motion for summary judgment dismissing the complaint against her, dismissed as academic, without costs.

Resettled order of the same court, entered May 7, 1990, which granted the defendant Michel's motion for summary judgment dismissing the complaint and the cross claim of the defendant Wallman & Kramer against her and awarded her judgment on her counterclaim against the plaintiff, unani-

mously reversed, on the law, the motion for summary judgment is denied, the complaint and cross claim are reinstated, the judgment on the defendant Michel's counterclaim against the plaintiff is vacated and the parties are directed to proceed with discovery, without costs.

That portion of an order of the same court, entered September 27, 1990, which denied the defendant Wallman & Kramer's motion for reargument, dismissed as non-appealable; and that portion of the same order which denied the plaintiff's motion for summary judgment against the defendant Wallman & Kramer, unanimously affirmed, without costs.

On July 28, 1987, the defendant Michel signed a contract to purchase a townhouse from the plaintiff for $2,500,000. Paragraph 25 of the contract provided: "25. Notwithstanding any other provisions of this agreement to the contrary whether express or implied if the seller shall be unable to convey title to the premises on September 21, 1987 free and clear of all liens and encumbrances in accordance with the terms of this agreement, then the Purchaser shall have the right to cancel this agreement by notice to Seller and, in that event, the sole obligation and liability of the Seller shall be to promptly refund the deposit to the Purchaser. Upon the making of such refund, this agreement shall be deemed cancelled and this agreement, and any liens of the Purchaser against the premises, shall wholly cease and terminate, and neither party shall have any further claims against the other by reason of this agreement. The Seller may, but shall not be required to, bring any action or proceeding or incur any expense in order to render the title to the premises marketable. The Purchaser may nevertheless, accept such title as the Seller may be able to convey, without reduction of the purchase price or any credit or allowance against the purchase price without any liability on the part of the Seller. The acceptance of a deed by the Purchaser shall be deemed to be a full performance and discharge of every agreement and obligation on the part of the Seller to be performed under this agreement, except those, if any, which are herein specifically stated to survive closing. Unless otherwise stated, no obligation, liability, representation or warranty of Seller shall survive closing. Anything herein to the contrary notwithstanding Seller agrees to satisfy and discharge and to convey title free from all liens in amounts or securing amounts less than the purchase price, other than the Lis Pendens referred to in 26."

The Lis Pendens referred to in paragraph 26 pertained to a complaint filed by the plaintiff's ex-husband. By order of the

Supreme Court, the townhouse was to be sold and the proceeds held in escrow for the plaintiff and her ex-husband. The contract further provided for the closing to take place at the office of the plaintiff's attorneys, the defendant Wallman & Kramer, at 10:00 A.M. an September 21, 1987 and stated that "time is of the essence as to the Seller." Michel gave the plaintiff a $10,000 deposit upon execution of the agreement. At the time the parties negotiated paragraph 25 of the agreement, they were aware of the fact that a first mortgage existed on the property which was held by Media and Art Services, Inc. ("Media").

According to the plaintiff, prior to the closing, Michel sought to be released from the contract and offered the plaintiff $75,000. The plaintiff refused. Michel conceded that she was nervous about owning a townhouse by herself. The plaintiff further alleged that Michel and her attorney arrived at the closing thirty minutes late and did not have the checks for the remainder of the purchase price with them. Counsel for the plaintiff, however, did not have a satisfaction of the Media mortgage. A representative of Michel's title insurance company agreed to provide affirmative assurance that the mortgage would not be enforced against the property if the entire amount of the mortgage was placed in escrow. While the plaintiff was willing to place the money in escrow, Michel refused to accept this since the representative from the title company would not omit the mortgage as an exception from the title report and a cloud would remain on the title preventing Michel from immediately disposing of the property.

The representative from the title company attempted to reach her superior to obtain permission to remove any exception but he was out to lunch. Rather than awaiting his return, after her checks for the payment of the balance of the purchase price arrived at noon, Michel refused to close. Counsel for Michel handed counsel for the plaintiff a notice of cancellation of the contract, which had already been typed and signed by Michel, and a demand for the return of her downpayment. Michel and her attorney then left the closing at 12:40 P.M., as the attorney had to attend another closing.

Counsel for the plaintiff alleged that when the title company supervisor returned from lunch at 1:00 P.M. he agreed to omit any exception concerning the mortgage from the title. An affidavit from Media's attorney also indicated that a satisfaction of the mortgage could have been obtained at any time before or on the date of closing. Counsel for the plaintiff notified Michel's attorney the next day of the title insurance

company's decision to omit the exception, but Michel still refused to close.

The plaintiff thereafter instituted this action against Michel for breach of contract and against her attorney's law firm, for malpractice and breach of contract. Wallman & Kramer cross claimed against Michel and Michel cross claimed against the law firm. Michel's motion for summary judgment was granted by the Supreme Court in an order entered March 28, 1990. A resettled order was entered May 7, 1990. Wallman & Kramer moved for reargument and the petitioner moved for summary judgment against Wallman & Kramer. In an order entered September 27, 1990, the Supreme Court denied reargument and denied the plaintiff's motion for summary judgment. By order entered January 22, 1991, this court consolidated the three appeals.

The order of March 28, 1990 was superseded by the resettled order of May 7, 1990. However, we reverse that order and deny the defendant Michel's motion for summary judgment. While paragraph 25 of the parties' agreement required the plaintiff to provide a satisfaction of the Media mortgage as Michel maintains, questions of fact exist regarding her cancellation of the agreement at 12:40 P.M. on the date of closing.

In every contract there is a covenant of good faith and fair dealing preventing a party from doing anything to destroy or injure the right of the other party to receive the fruits of the contract (*Gallagher v Lambert*, 74 NY2d 562, *rearg denied* 75 NY2d 866; *Black v MTV Networks*, 172 AD2d 8, *lv dismissed* 79 NY2d 915). Questions of fact remain as to Michel's compliance with that obligation, given her apparent attempts to be released from the contract, the previously drawn notice of cancellation handed to the plaintiff's attorney at the closing and her departure from the closing at 12:40 P.M. so that her attorney could attend another closing. In a contract where time is of the essence, " 'each party must tender performance on law *day' (Grace v Nappa*, 46 NY2d 560, 565, *rearg denied* 47 NY2d 952 [emphasis added])" *(Wolf v Atai*, 139 AD2d 729, 731). The question remains whether the plaintiff could have obtained a satisfaction of the mortgage prior to the end of the law day.

Accordingly, it was error to grant Michel's motion for summary judgment.

The Supreme Court, in its order entered September 27, 1990, properly deemed Wallman & Kramer's motion as one for reargument, rather than renewal. The denial of a motion

for reargument is not appealable *(Silverstein v Silverstein,* 130 AD2d 369). The appeal from that portion of the order denying reargument is therefore dismissed *(Props For Today v Kaplan,* 163 AD2d 177).

The plaintiff's motion for summary judgment against Wallman & Kramer, based on her contention that the failure to obtain a satisfaction of the mortgage constituted attorney malpractice, was properly denied. In opposition to the motion, the law firm contended that it acted reasonably and consistent with attorneys' standards in handling this matter and that the failure to close was the result of Michel's unjustifiable breach. A title expert, who is also a real estate attorney, alleged in an affidavit, that the actions of the law firm did not depart from good and accepted legal practice. An affidavit from an attorney for Media also revealed that a satisfaction of the mortgage had been timely prepared and was forwarded to another attorney acting on the plaintiff's behalf.

In order to sustain an action for legal malpractice, a plaintiff must prove the negligence of the attorney, that the negligence was the proximate cause of the loss sustained and actual damages *(Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood,* 170 AD2d 108). An attorney is not, however, held to a rule of infallibility *(Grago v Robertson,* 49 AD2d 645). The issue of whether the specific conduct of Wallman & Kramer constituted malpractice requires a factual determination to be made by a jury *(see, Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood, supra; Grago v Robertson, supra).* Accordingly, the plaintiff's motion for summary judgment was properly denied. Concur—Rosenberger, J. P., Wallach, Smith and Rubin, JJ.