■ BARBARA CHISHOLM, Respondent, v ST. VINCENT'S HOSPITAL AND MEDICAL CENTER OF NEW YORK et al., Appellants, et al., Defendants. [607 NYS2d 674] —Order, Supreme Court, New York County (Michael J. Dontzin, J.), entered May 21, 1992,

which, *inter alia,* denied defendants-appellants' cross-motion for summary judgment dismissing the complaint, affirmed, without costs.

This action arises out of the suicide of plaintiff's decedent, Lionel Chisholm, on August 11, 1983. On July 21, 1983, decedent was found unconscious in a hotel following a Valium overdose and taken by ambulance to North Central Bronx Hospital for emergency care and psychiatric evaluation. The next day he was transferred to the psychiatric unit of defendant St. Vincent's Hospital and Medical Center of New York ("St. Vincent's") as an involuntary patient pursuant to Mental Hygiene Law § 9.39 (a), authorizing the emergency admission for immediate observation, care and treatment for a period of fifteen days for any person alleged to have a mental illness which is likely to result in serious harm to himself or others. On July 26, his admission status was converted to voluntary and he immediately filed a "72 hour letter." The filing of this letter required that he be immediately released or, if there were reasonable grounds for belief that he was in need of involuntary treatment, that within 72 hours he either be released or application made to the Supreme Court for authority to retain him involuntarily (Mental Hygiene Law § 9.23 [a]; § 9.13 [b]). Decedent was released within 72 hours and instructed to present himself at the Harlem Hospital Outpatient Clinic. When he was examined there on August 4, he was found to be suffering from "suicidal ideas right now" and was transferred to the psychiatric emergency room. However, two hours later he slipped away and returned home. Later that day, he spoke by telephone with a physician from the clinic who persuaded him to return to St. Vincent's. At the time he arrived there, the emergency room doctor concluded that decedent was acutely suicidal.

On August 9, decedent's admission status was converted from involuntary to voluntary. Later that same day decedent filed a 72 hour letter demanding his release. He was discharged on August 11, two days after filing the letter. Several hours later, in the presence of his girlfriend and in the bedroom of his parents' eleventh floor apartment, decedent jumped to his death.

Plaintiff has adequately established that there are issues of fact concerning the treatment rendered to decedent to withstand summary judgment. Mental Hygiene Law § 9.23 (a) authorizes, and requires, conversion from involuntary to voluntary status if the patient is "suitable and willing to apply

[for conversion] to a voluntary status". Here, the affidavit of plaintiff's expert clearly created a question of fact as to whether classifying decedent as a suitable patient for such conversion was a departure from accepted medical practice. Moreover, even if that conversion was proper, decedent's discharge was not necessarily required under the statute until 72 hours elapsed from the filing of his letter. Thus, his discharge at least one day prior to the expiration of that period, as well as defendants' failure to seek a court order for authority to retain him involuntarily, also give rise to questions of fact concerning whether good medical practice was followed in discharging him from the hospital. Concur—Carro, J. P., Rosenberger and Ellerin, JJ.

Kupferman, J., dissents in a memorandum as follows: It seems to be a going ploy to attempt to shift the blame to someone else in a suicide situation (cf., Martin v Hacker, 83 NY2d 1).

The postulate by William Shakespeare, in "Julius Caesar", that the fault is "in ourselves" is attempted to be avoided in litigation such as this.

I dissent and would reverse and grant the defendants' cross-motion for summary judgment dismissing the complaint.

As the majority points out, the plaintiff's decedent was clearly suicidal. Nothing the defendants did or could have done would have changed that.

He committed suicide while in the company of his girlfriend and in his parents' apartment. If he had been put under restraint in the defendant hospital, it would only have been temporary. He had already been in and out of care.

As we said in Tarter v Schildkraut (151 AD2d 414, 416, lv denied 74 NY2d 616), "we do not believe the jury could properly have inferred that reasonable security measures would have deterred the act of violence which was committed here."

It is too far a reach exceeding any grasp (see, "Andrea del Sarto" by Robert Browning) to find a causal connection between the hospital discharge and "decedent's depression—caused suicide" (cf., Martin v Hacker, supra).