OPINION OF THE COURT
Lewis R. Friedman, J.
The outrage of the sexual abuse of minors and the equally *619 outrageous false allegation of sexual abuse are both increasingly common, but can hardly be called "routine”. This complex legal and medical malpractice case arises out of a "routine” charge of sexual abuse litigated in Family Court.
On this summary judgment motion the operative facts are not in dispute. In August 1987 Jennifer Marquez was five years old. Her mother, plaintiff Jenny Marquez, brought her to Presbyterian Hospital with complaints of constipation and occasional bloody stools. Defendant Dr. Bregstein examined her in the presence of Dr. Hauger and suspected sexual abuse. This was reported to the Bureau of Child Welfare. The child was taken from her parents’ custody, remained in the hospital for two weeks, and was ultimately placed in the care of her maternal grandmother. The City filed a sexual abuse petition in Family Court, Bronx County (index No. NA 6344/87). The Legal Aid Society, and its staff attorneys Lenore Gittis and Mary Jo Dahlbloom (the Legal Aid defendants), was assigned as the Law Guardian for the child. The parents denied involvement in any sexual abuse. On December 15, 1987, Judge Rhoda Cohen held a fact-finding hearing. The Law Guardian took the position that the physical findings were inconsistent with the explanations offered by the parents and were consistent with sexual abuse of the child. The court found, by a preponderance of the credible evidence, that the child was sexually abused. After a dispositional hearing held on June 23, 1986, the court placed the child with the Department of Social Services for 18 months. Eventually Jennifer was returned to her parents’ custody.
The parents are suing in their own right and as the "parents and natural guardians” of the infant. The first cause of action on behalf of Jennifer sounds in legal and medical malpractice. It alleges that the Legal Aid defendants should have called Dr. Jose Moulier, a Presbyterian Hospital doctor, to testify at the fact-finding hearing. He had dealt with the parties and had concluded, without a physical examination of the child, that there was no sexual abuse. Dr. Moulier did testify at the dispositional hearing. Plaintiffs also assert that Presbyterian Hospital and its doctors committed malpractice by misdiagnosing the case and by submitting an erroneous report of sexual abuse. The City and its attorneys, defendants Bergall and Feldman, prosecuted the matter in Family Court; allegedly they too failed to subpoena Dr. Moulier. The second cause of action is by Jenny Marquez against her attorney in Family Court, defendant Kurtzman. The third cause of action *620 is by Angel Marquez against his attorney in Family Court, defendant Murphy.
The Legal Aid defendants move for summary judgment on the grounds that plaintiffs fail to state a claim for malpractice. The Presbyterian Hospital, Dr. Bregstein, Dr. Hauger, together with Drs. Silverstein and Agre, who had examined the child at the hospital (the Hospital defendants), move for summary judgment on the ground that they are immune from a suit for reporting acts of sexual abuse.
THE LEGAL AID MOTION
The motion by the Legal Aid defendants requires the court to determine an issue of first impression: the standard under which legal malpractice actions can be brought against Law Guardians. In order to reach a determination, the court must first examine a number of issues as to the role of Law Guardians in the Family Court.
Today Law Guardians are essential to the functioning of the Family Court and serve vital roles in all types of cases in that court and in Supreme Court matrimonial and custody cases. Yet, there is, and has been, no clear definition of the role of a Law Guardian. The term "Law Guardian” first appeared in 1962 when New York began to provide appointed counsel for juveniles in Family Court proceedings brought pursuant to Family Court Act article 3 (neglect) and article 7 (delinquency and persons in need of supervision) (Family Ct Act § 241; L 1962, ch 686). The drafters of the statute did not themselves have a precise concept of the role counsel should play in Family Court proceedings. They had difficulty in reconciling an appointed attorney’s role as advocate and that same attorney’s role as a "guardian”; this ambiguity no doubt resulted from their view that Family Court proceedings should not be truly adversarial (see, Report of Joint Legis Comm on Ct Reorg, 1962 McKinney’s Session Laws of NY, at 3428, 3431). Indeed, the term "Law Guardian”, implying lawyer and guardian, is ambiguous. The Legislature could easily have used the term "counsel”, if that role alone had been intended. The Legislature declared "that counsel is often indispensable to a practical realization of due process of law” and "may be helpful in making reasoned determinations of fact and proper orders of disposition.” (Family Ct Act § 241; L 1962, ch 686.) An early interpreter of the statute, who had been heavily involved in its drafting, noted that in his view there may well *621 be three roles for a Law Guardian — advocate (serve as defense counsel), guardian (act in the "best interests of the child”), and officer of the court (interpret the court to parent and child) (Isaacs, The Role Of The Lawyer In Representing Minors In The New Family Court, 12 Buff L Rev 501, 506-507 [1963]).
There is consensus in the legal community that there is an essential duality of the Law Guardian’s role — defense attorney and guardian. The ambiguity in the role was further complicated when the Supreme Court held that counsel was required in certain Family Court proceedings (In re Gault, 387 US 1 [1967]). Shortly after Gault, the Court of Appeals found that the unsought-after advent of adversarial proceedings in the Family Court created a conflict between the traditional role of counsel and the Law Guardian’s role as "impartial adviser to the court on the social problem involved” (Matter of Samuel W., 24 NY2d 196, 199, revd on other grounds sub nom. In re Winship, 397 US 358). In 1970 the Legislature expanded Family Court Act § 241 to provide that Law Guardians may be appointed for all minors "who are the subject of family court proceedings” (L 1970, ch 962). The amended statute, however, provides no further guidance in refining the dual role of Law Guardians; the 1970 legislative declaration finds them needed as "counsel [1] to help protect [the minor’s] interests and [2] to help them express their wishes to the court” (Family Ct Act § 241).[1]
The Code of Professional Responsibility defines the basic responsibility of counsel — to "Represent a Client Zealously Within the Bounds of the Law” (Canon 7). In the traditional criminal defense setting counsel’s role is well understood. "When a defendant engages a lawyer or has one assigned to him he has but one simple and understandable object; he wants to be free. He does not want to be edified with moral precepts, or be told that he should subordinate his selfish interests to the public good by pleading guilty and atoning for his sins” (Levy, The Dilemma of the Criminal Lawyer, 9 Record of Assn of Bar of City of NY 215, 220). Indeed, this court is aware that in Family Court, "counsel” is the role that most Law Guardians have adopted, at least in proceedings *622 under Family Court Act articles 3 and 7. The Legal Aid Society, which has long provided Law Guardian services in New York City, has, from the first of its contracts with the City, taken the firm position that it will zealously represent its clients as though the children were adults.
The adversarial role for Law Guardians has, quite properly, predominated. As the Second Department noted it is "the right and duty of such counsel [Law Guardian] to proceed in the same manner as counsel representing a defendant in a criminal proceeding” (Rapoport v Berman, 49 AD2d 930, 931). In the routine case "the authority to make decisions is exclusively that of the client and * * * are binding on his lawyer” (Code of Professional Responsibility EC 7-7). The same principle applies to juveniles (see, American Bar Assn, Juvenile Justice Standards Relating to Counsel for Private Parties, Standard 3.1 [b] [ii] [b] [1980]). Recent cases, without any discussion of the issue, routinely treat Law Guardians as though they were counsel in a criminal case. (See, e.g., Matter of Elianne M., 196 AD2d 439, [substitution of counsel of the child’s choosing for the Law Guardian]; Matter of Jamie TT., 191 AD2d 132 [Law Guardian] held to the same standard of competent representation as counsel in a criminal case]; Matter of Lauren KK., 175 AD2d 393 [objections at trial]; Matter of Detrece H., 164 AD2d 306 [objection to absence of the juvenile]; Matter of Bentley v Bentley, 86 AD2d 926, 927 ["the relationship (between) the Law Guardian and the child * * * is one of 'attorney-client’ ” and communications are clearly clothed with the testimonial privilege]; Matter of Randy G., 127 Misc 2d 1079, 1079-1080 [Fam Ct] [presence during mental health evaluation]; Matter of Marpole, 145 Misc 2d 549, 554 [Fam Ct] [waiver of rights to retain property].)[2]
Yet there are other cases where Law Guardians are treated as parties which have the right, or duty, to express their own views on the case. Thus, the Law Guardian may be required to take a position on the course to be followed during the case. "As with other advocates, she may develop a point of view * * * with which the court, or other counsel, may disagree. This in no way detracts from the effectiveness of the represen *623 tation of the child” (Matter of Stien v Stien, 130 Mise 2d 609, 615 [Fam Ct 1985]). The Second Department, in evaluating when a Law Guardian may be relieved, has reaffirmed the independence of the Law Guardian. "A Law Guardian’s role in a child protective proceeding not only includes serving as counsel and advocate for the child, but also encompasses aiding the court in arriving at an appropriate disposition (see, Matter of Apel, 96 Misc 2d 839, 842-843). A Law Guardian may thus attempt to persuade the court to adopt that position which, in the Law Guardian’s judgment, would best promote the child’s interest (see, Matter of Apel, supra)” (Matter of Dewey S, 175 AD2d 920, 921). In a recent case, Supreme Court appointed a Law Guardian to exercise independent judgment after finding that counsel retained for the juvenile by the father had an inherent conflict of interest (P. v P., NYLJ, Nov. 10, 1992, at 29, col 3).
In this second, noncounsel role, the Law Guardian acts much in the same manner as a guardian ad litem, appointed to represent the interest of a person under disability, a proposed incompetent or proprosed conservatee.[3] The courts generally expect a guardian ad litem to use independent judgment. The Court of Appeals has stated the standard for guardian ad litem for incompetents. "It is incumbent on the guardian to make an objective evaluation of the circumstances and to take such action as will advance what he perceives to be the best interests of the ward; the wishes of the ward will be relevant but not determinative.” The guardian "may [not] be regarded as an unbiased protagonist of the wishes of [the] incompetent” (Matter of Aho, 39 NY2d 241, 247). As one court noted, "Courts in the past have alternated between describing the role of the [guardian ad litem] as 'representing’ and also 'protecting the rights and interest’ of the proposed conservatee” (Matter of Fisher, 147 Misc 2d 329, 334, n 8; see also, Matter of Becan, 26 AD2d 44; Matter of Berman, 24 AD2d 432, *624 433). That description is, indeed, similar to Family Court Act § 241’s definition of a Law Guardian.
When guardians ad litem are appointed in Family Court, the court assumes that the guardian will take a "best interest” of the child standard. However, in a recent case a Family Court Judge explicitly analogized a Law Guardian to a guardian ad litem. "It is equally obvious that when the child subject of the proceeding is very young, the function of the Law Guardian can differ little from that of [a] guardian ad litem” (Matter of Scott L. v Bruce N., 134 Misc 2d 240, 243). In the guardian ad litem role the Law Guardian acts as a "substitute client or concerned parent” (cf., In re Lisa G, 127 NH 585, 591, 504 A2d 1, 5; In re Dobson, 125 Vt 165, 168, 212 A2d 620, 622; see, RLR v State, 487 P2d 27, 35 [Alaska]). Indeed, an independent role for a Law Guardian was suggested by the Court of Appeals in Braiman v Braiman (44 NY2d 584, 591) where the court suggested that a "close investigation and exploration of the truth” was required. Similarly the New York State Bar Association’s Law Guardian Representation Standards (Vol II: Custody Cases [1992]) is premised on the view that Law Guardians will make an independent investigation and express the child’s view. "When the child is too young to articulate his or her wishes or provide assistance to counsel, the law guardian must of course determine the child’s interest independently” (Commentary to Standard B-2, at 22-3).
The hybrid nature of the Law Guardian’s role requires that in some cases liability for improper conduct be viewed under a standard different from that applicable to "counsel” for a party. A proper standard must serve two roles: (1) protect infants from malpractice and improper conduct and (2) protect Law Guardians from litigant’s challenges of their proper exercise of discretion.
In a legal malpractice case the plaintiff must prove (1) the existence of an attorney-client relationship, (2) negligence by the attorney, (3) proximate cause between the negligence and the loss sustained, and (4) actual damages (Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood, 170 AD2d 108, 114, affd 80 NY2d 377; Gray v Wallman & Kramer, 184 AD2d 409, 413; cf., Carmel v Lunney, 70 NY2d 169, 173). That standard properly protects the clients when attorneys deviate from the appropriate standard of care and protects attorneys in their exercise of professional judgment. That may well be an appropriate standard to apply to a Law Guardian in a case *625 where the predominate role of the Law Guardian is that of "counsel”. For example, when a Law Guardian is defending a delinquency proceeding or is representing an older child in a neglect proceeding the usual legal malpractice standard of care adequately protects the parties (see, Matter of Jamie TT., supra).
However, when a Law Guardian is serving in a predominately guardian ad litem role, a different result should follow. People who exercise discretion and make value judgments in the "best interests” of their ward must be protected from needless collateral litigation which would undermine their good-faith efforts. As the cases discussed above demonstrate, children who are incapable of intellectually expressing their views require that Law Guardians exercise independent judgment on their behalf. In order for that judgment to be truly independent, the Law Guardian must not be threatened by the possibility that differences of opinion with the infant’s parents may give rise to tort litigation. For the threat of even a baseless suit may serve to intimidate Law Guardians who should properly take aggressive positions adverse to the parents of the child.
This case shows the need for a deviation from the ordinary rules governing legal malpractice to protect the Law Guardian’s exercise of discretion.[4] The parents sue on the infant’s behalf as "parents and natural guardian” of their child as permitted by CPLR 1201. The result is that plaintiffs seek to avoid the rule barring an action in their name in the guise of suing on their child’s behalf.[5] The complaint is couched in the traditional language of a legal malpractice case. However, the substance of the claim is not really that the Law Guardians violated the standard of care of lawyers representing a client but that the Law Guardians improperly exercised their judgment in determining what was "the best interest” of the child.
The court concludes that the proper standard where there are very young children, and the guardian ad litem role predominates, is that liability should attach only if there is a showing that the Law Guardian failed to act in good faith in exercising discretion or failed to exercise any discretion at all. *626 In some cases it may be difficult to determine which role of the Law Guardian predominates. The court need not resolve that question in this case since the guardian ad litem role clearly predominates here. In a proceeding under Family Court Act article 10 the Law Guardian is representing the abused not the abuser. The Law Guardian’s role as "counsel” for the victim is substantially reduced while the guardian ad litem role predominates. The Law Guardian is required to take an independent position based on an evaluation of the best interest of the child. That role, as demonstrated here, will often be at odds with the position of the allegedly abusing parents.
A test which looks solely at the Law Guardian’s good faith protects the Law Guardian’s exercise of that independent judgment which is implicit in a role which requires acts in another’s "best interest”. Indeed, Family Court has used "good faith” as the standard for evaluating the acts of the Commissioner of Social Services (see, Matter of Tricia Lashawnda M., 113 Misc 2d 287, 297-298). The usual legal malpractice standard is simply inappropriate for Law Guardians acting as guardians ad litem. The usual standard places emphasis on the technical competence of "counsel” under the standard of care of attorneys and ignores the discretionary judgmental aspects of a Law Guardian’s role. The usual malpractice standard places a Law Guardian, at least for a very young child, at substantial risk of the ultimate court decision. That is contrary to the strong public policy requiring a Law Guardian to exercise good faith in reaching an "independent” position on the child’s behalf.
This court holds that a malpractice suit should not be allowed in the circumstances here. Plaintiffs’ allegations show that the Law Guardian needs the additional protection of the "good faith” standard. It is unconscionable to permit a parent who has been found to have been involved in the sexual abuse of a child to sue for "damages” allegedly caused to the child because the court found an 18-month placement to be appropriate. Plaintiffs’ position turns the Family Court proceeding on its head. Plaintiffs would penalize the lawyers, not the parents involved, for the alleged injury to the child resulting from the parents’ acts.[6] A Law Guardian must be able to *627 function independently and to advocate successfully the position that a child should be removed from parents where sexual abuse has occurred without fear of a damage action by those parents.
The traditional malpractice standard requires a jury trial of the issues (Grago v Robertson, 49 AD2d 645, 646; Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood, supra, 170 AD2d, at 115; Gray v Wattman & Kramer, supra). The law should not permit a jury trial on a "malpractice” claim of the type alleged here; rather, the Appellate Division, alone, should review a Family Court decision. (CPLR 5702; Family Ct Act § 1111.) The result sought by plaintiffs is also contrary to the very purpose of the child abuse laws. As Chief Judge Kaye noted in her 1993 speech to the American Law Institute: "Indeed, by definition, the [neglect and abuse] laws are not adversarial; they are child protective, and they seek to advance and promote the best interests of the child” (ALI, Remarks & Addresses at the 70th Annual Meeting, at 56).
The test of a Law Guardian’s good faith, as with a trustee’s, turns on whether, on the facts as they were known at the time, judgment was reasonably exercised. "A wisdom developed after an event and having it and its consequences as a source is a standard no man should be judged by” (Costello v Costello, 209 NY 252, 262). The courts "look at the facts as they exist[ed] at the time of their occurrence, not aided or enlightened by those which subsequently take place” (Purdy v Lynch, 145 NY 462, 475-476).
The affidavits here clearly fail to assert either that the Law Guardians did not act in good faith or that they failed to exercise discretion. Rather, plaintiffs’ expert opines on the Law Guardians’ poor judgment of failing to call Dr. Moulier. Boiled down to its essentials, the case is really a disagreement over whether all witnesses, "favorable or hostile”, should have been called. The proposed "correct” behavior suggested by plaintiffs deprives the Law Guardian of discretion and creates a new role for the Law Guardian — a cross between a prosecutor and defense counsel for the allegedly abusing parents. But that is not one of the roles created by Family Court Act § 241. The child needs the protection of a guardian to express a totally independent view, not an attorney who merely calls every possible witness in the hope that it might help the parents’ view of the case. Of course, the parents’ counsel could obviously have called the same witness.
*628 It is well established that an adverse party may not sue the adversary’s attorney for malpractice (Fried v Bower & Gardner, 46 NY2d 765, 767). Thus the parents’ suit as plaintiffs in their own name against the Legal Aid defendants fails under any standard.
THE HOSPITAL’S MOTION
The motion by the Hospital defendants is far simpler. A "Report of Suspected Child Abuse or Malpractice” was sent to the Department of Social Services pursuant to Social Services Law § 413. Social Services Law § 419 provides that a person filing a report "shall have immunity from any liability, civil or criminal, that might otherwise result by reason of such actions.” The courts have found that immunity attaches "when there is reasonable cause to suspect that the infant might have been abused and when the party so reporting has acted in good faith” (Kempster v Child Protective Servs. of Dept. of Social Servs., 130 AD2d 623, 625). On this record defendants show that there was "reasonable cause” for the suspicion of abuse. The medical records show that there were suspicions rectal and vaginal findings warranting a report. Indeed, the Family Court after an evidentiary hearing found that sexual abuse did, in fact, occur. There is no issue raised as to the Hospital defendants’ good faith. Thus, the Hospital defendants are entitled to judgment of dismissal.
On a summary judgment motion the court should search the record and grant judgment accordingly (CPLR 3212 [b]; United States Trust Co. v Gill & Duffus, 201 AD2d 334 [1st Dept]; Cosentino v Long Is. R. R., 201 AD2d 528 [2d Dept]). Clearly the case by the parents against the City and its attorneys, Bergall and Feldman, is not legally sufficient (Fried v Bower & Gardner, supra). Their role as "prosecutors” of the case could not give rise to liability to the abused infant victim. Those parties are also entitled to a judgment of dismissal.
Defendants Kurtzman and Murphy suggest that this court search the record and dismiss as to them. The record is inadequate to reach a determination on whether, under a traditional malpractice analysis, those defendants breached their duty to their clients.
The motion and cross motion are granted.
The clerk shall enter judgment of dismissal in favor of all defendants except Kurtzman and Murphy.

. A leading commentator has noted an ongoing theoretical argument on the role of Law Guardians and has suggested an alternative: "Instead of focusing on the child’s wishes versus best interests, the question should address the child’s wishes versus imminent danger to the child” (Sobie, Representing Child Clients: Role of Counsel or Law Guardian, NYU, Oct. 6, 1992, at 1, col 1). No court has yet adopted Professor Sobie’s analysis.

. Recent ethics opinions have broadly interpreted DR 7-104 (A) (1) to preclude contact between a lawyer for a parent and a child for whom a Law Guardian has been appointed without the Law Guardian’s consent (1993 Opns NY St Bar Assn Comm on Prof Ethics No. 656; Wisconsin E 89-14 [1989]; Arizona 87-8 [1987]; North Carolina 61 [1989]; see also, West Virginia 83-9 [1983]).

. The uncertain role of the guardian ad litem in conservatorship and incompetency proceedings was one of the factors taken into account when the Mental Hygiene Law was revised to repeal articles 77 and 78 and create the new guardian statute, Mental Hygiene Law article 81 (Law Rev Commn Comments, McKinney’s Cons Laws of NY, Book 34A, Mental Hygiene Law § 81.10, 1994 Pocket Part, at 260). Under the law effective April 1, 1993 (L 1992, ch 698), the court appoints a "court evaluator” (Mental Hygiene Law § 81.09) whose role is to aid the court and the alleged incapacitated person to understand the facts and circumstances and to make recommendations to the court. This role is clearly distinguished from that of "counsel” (Mental Hygiene Law § 81.10).

. The affidavits of the defendants make it clear that they did indeed exercise their "judgment” as to the "best interest” of the child as well as appear as the child’s "counsel”.

. The court could appoint a guardian ad litem under CPLR 1201. However, that would solve one part of the problem, the parents’ conflict of interest, but would not resolve the issue of protecting the guardian.

. This is consistent with the developing trend of claiming that an unacceptable result and improper behavior are always someone else’s fault (Chrisholm v St. Vincent’s Hosp. Med. Ctr., 201 AD2d 420 [1st Dept, Kupferman, J., dissenting]).