[737 NYS2d 471]

CATHERINE BLUNTT, an Infant, by Her Parent and Guardian, MICHELLE BLUNTT, et al., Appellants-Respondents, v ELIZABETH O'CONNOR, Respondent-Appellant.

Fourth Department, February 1, 2002

APPEARANCES OF COUNSEL

*Ronald Cohen,* New York City, for appellants-respondents.

*O'Shea, Reynolds & Cummings,* Buffalo (*Michelle Parker* of counsel), for respondent-appellant.

### OPINION OF THE COURT

PINE, J. P.

This case raises the issues, not previously considered by an appellate court in this State, whether a parent may on his or

her own behalf and on behalf of his or her child sue a court-appointed Law Guardian for legal malpractice and, if so, what legal standard should apply in evaluating the Law Guardian's representation. We conclude for the reasons that follow that plaintiff mother (hereafter plaintiff) in this case lacks standing to bring such an action either individually or on behalf of plaintiff child and therefore conclude that the order of Supreme Court dismissing the complaint should be affirmed on that ground. Were we to reach the merits, we would conclude that the Law Guardian in the circumstances of this case owes no duty to plaintiff individually and has absolute quasi-judicial immunity in an action commenced on behalf of the child.

## I

### FACTS

The child was born on December 12, 1996. The father, who was never married to plaintiff and apparently never lived with her, brought a paternity proceeding on February 12, 1997, and it is undisputed that paternity was established. He filed a Family Court petition seeking visitation that was followed by an order of Judge Rosa dated June 13, 1997 appointing defendant Law Guardian for the child and by an order dated July 10, 1997 permitting visitation in accordance with a stipulation of the parties placed on the record by the Law Guardian.

By another petition dated October 17, 1997, the father alleged that plaintiff had denied him visitation on three occasions without just cause. On October 22, 1997, the court again appointed defendant the child's Law Guardian and the parties appeared in court on November 7, 1997; both parents had new counsel. The court noted on the record that, despite being represented, plaintiff sent the court an extensive letter containing, inter alia, criticism of defendant for failing to bring forward certain of plaintiff's concerns. Although no motion was made at that time to replace defendant as Law Guardian, the court stated that plaintiff's complaints concerning defendant would not warrant such action. Plaintiff's concerns not brought forward by defendant included alleged exposure of the child to cigarette smoke, the need for a proper car seat, the need to avoid exposing the child to animals because of potential allergy problems, and the presence of a suicidal, and possibly homicidal, relative in the father's home. The father's attorney stated in response that the father does not smoke in the presence of the child, had purchased a new car seat and has no pets.

Because of the serious nature of some of the allegations and the difference in the parents' versions of the facts, defendant requested the appointment of a psychologist to evaluate the situation and make a recommendation in the best interests of the child, inasmuch as the child should visit her father if it was safe for her to do so. The court appointed a psychologist over plaintiff's objection. Visitation was continued and the matter was adjourned.

By order to show cause in January 1998 plaintiff sought suspension of the father's visitation. That motion was denied without prejudice on February 2, 1998, and a hearing on the father's violation petition was set for March 19, 1998. On February 24, 1998, plaintiff filed a modification petition seeking supervised smoke-free visitation. That same day, the father filed a cross petition alleging further violations of the visitation order by plaintiff.

The record contains the decision portion of that hearing, dated June 8, 1998, as well as a few pages of the testimony taken in March and April 1998. It is apparent that the court heard testimony from Dr. Mark Schachter, the court-appointed psychologist; both parents; the child's paternal grandmother; a half-sister of the father who is also plaintiff's friend; and Dr. K. Michael Cummings, chairman of the Department of Cancer Control and Epidemiology at Roswell Park Institute. The court found that the evidence presented by Dr. Cummings concerning the effects of smoke on young children was uncontroverted but irrelevant because he was unable to state whether smoke that might linger on hair and clothing would subsequently have an adverse effect upon a person.

Most significantly, Dr. Cummings did not testify whether the child was in fact placed in an environment with cigarette smoke during visitation, which was the issue in controversy. The court found that the child was not placed in such an environment, declining to credit the testimony of plaintiff's friend but accepting the testimony of Dr. Schachter that, while the fears of plaintiff about improper car seats or second-hand smoke may in fact be reasonable ones, her reactions "in fact have been far outside the actual facts." The court stated that Dr. Schachter "could not find support medically [for] any of [plaintiff's] allegations and his assessment found there was no reason to restrict the father in his visitation." The court found the child's paternal grandmother "intelligent and sincere and restrained in her testimony" and plaintiff's reaction to the paternal grandmother inappropriate. It further found the father's

testimony credible and reasonable and stated that the father has acted "in a restrained and gentlemanly fashion in the face of what have been, at times, very vigorous and in fact what the [c]ourt will find as outrageous and baseless allegations." The court detailed the efforts of the father in providing "new carpeting, furniture, paint, [and] a relatively new furnace" and referred to evidence that inasmuch as he had an asthmatic person living in his home, he had taken great steps to create a proper environment for the child, who appears to have a tendency toward asthma. The court found that plaintiff has resisted the father's efforts to be in contact with the child almost "every single step of the way" and credited the testimony of the father that he had lost contact with plaintiff before the birth of their child and that she had failed to advise him of her hospital stay.

The court further found that plaintiff "has been bordering on a pathological obsession with this child. * * * Her appearance, her demeanor, [and] her testimony, confirm[ ] Dr. Schachter's assessment that she is rigid and unrealistic [and] that she clings to some inappropriate judgments * * * that she makes in the face of all other countervailing evidence to the contrary."

The court noted that, whenever plaintiff has received an assessment or a comment from Dr. Schachter or defendant that she finds inconsistent with her version of events, i.e., "when they will not advocate her position, she becomes vigorous in fighting them. Her obvious rancor and hostility towards those individuals as well as the father were evident throughout the entirety of these court proceedings." The court anticipated that it too would be on the list of those vigorously opposed by plaintiff. The court stated, "[S]he clearly, on several occasions, emphatically admitted that all of this child's illnesses are based on the father's contact and that is completely belied by the hospital record she had subpoenaed and brought into the Court. The Court finds in fact this child was seen by her physician as stated on May 1997 for an obvious congestion and cough and yet [plaintiff] maintains that never occurred."

The court denied plaintiff's modification petition, finding no reason to have supervised visitation, and granted the father's violation petition. The court stated that it would have expanded visitation for the then 18-month-old child if the father had sought it. The court also forbade both parents from taping conversations between them, including telephone conversations, or from videotaping the child before or after visitation.

A notice of appeal from that order was filed by plaintiff and an application for a stay pending appeal and a renewed ap-

plication for a stay were made. Those applications were both denied and the appeal was never perfected.

On January 5, 1999, plaintiff filed a complaint in the United States District Court for the Western District of New York seeking an injunction against Judge Rosa based on her having directed the parties not to videotape the child. Plaintiff alleged that Judge Rosa was biased against her, an African-American, in favor of the father, who had a Caucasian parent, and that there was no rational basis for Judge Rosa's rejection of her evidence, which was far more credible. District Court sua sponte dismissed that complaint 10 days later.

In the meantime, on January 7, 1999, the father filed another violation petition. That same day, the court reappointed defendant Law Guardian, for the third time. On February 12, 1999, plaintiff, represented by a third attorney, moved to have Judge Rosa recuse herself. That motion was denied on February 22, 1999. The record contains a letter from defendant to plaintiff's attorney dated April 16, 1999 declining plaintiff's request that defendant withdraw as Law Guardian, but no motion for substitution of the Law Guardian appears in the record.

On April 30, 1999, plaintiff commenced a CPLR article 78 proceeding in Supreme Court against Judge Rosa, alleging that the Judge had demonstrated neglect for the child's safety by permitting visitation with the father and seeking an order requiring Judge Rosa to disqualify herself from any proceeding in which plaintiff or the child was a party. That proceeding was dismissed on May 13, 1999.

By yet another attorney, plaintiff commenced the instant action against defendant in Supreme Court on May 24, 1999, alleging seven causes of action in a verified complaint: (1) that defendant breached her duty of sole, exclusive and zealous representation of the child; (2) that defendant failed and refused to conduct a full and complete investigation of the conditions of the child's legally mandated visitation with the father and permitted the child to be endangered by conditions in his household; (3) that defendant, when advised that the child was being fed unsuitable food in the father's household, breached her duty to the child by allowing, permitting and facilitating the child's exposure to unsuitable food; (4) that defendant breached her duty to the child by becoming a second advocate for the father and by misrepresenting to Family Court the impact of conditions in the father's home; (5) that defendant breached her duties as a fiduciary and an attorney for the child by failing and refusing to protect the child's health, advocating

a view of the facts belied by current scientific knowledge, failing to consult adequately with plaintiff and the child's maternal grandmother, failing to visit the child's home, and allowing herself to be co-opted by the father in violation of specified disciplinary rules; (6) that defendant's conduct resulted in loss of services on behalf of plaintiff; and (7) that defendant failed and refused to exercise her roles as Law Guardian and attorney in a proper manner due to racial bias and/or animus.

An answer denying most of the allegations and setting forth as an affirmative defense that the complaint alleges a frivolous claim and that defendant is entitled to costs and attorneys' fees was interposed on June 23, 1999.

In October 1999 the father's pending Family Court violation petition was reassigned and the Law Guardian serving in the new Family Court Judge's Part under a pilot program replaced defendant as the child's Law Guardian.

On April 14, 2000, defendant moved to dismiss the instant complaint on the ground that there was a "need to protect the exercise of discretion on behalf of all Law Guardians." She asserted, inter alia, that plaintiff lacks standing to sue on behalf of the child because plaintiff has interests adverse to those of the child in the underlying action; that the Family Court Judge could accept or reject the views of the Law Guardian; and that review of a Family Court order is properly by appeal to the Appellate Division. She sought sanctions on the ground that the action is frivolous. Plaintiffs opposed the motion to dismiss, asserting that defendant cannot "clothe herself as the protector of the office of law guardian" inasmuch as the Attorney General had declined her request for representation. Plaintiffs further asserted that defendant is potentially liable in money damages "in the same sense that any court-appointed attorney may be liable for malpractice." Plaintiffs asserted that in the underlying case defendant was acting as a Law Guardian, not a guardian ad litem, and was not entitled to the more lenient standard for guardians ad litem set forth in *Marquez v Presbyterian Hosp. in City of N.Y.* (159 Misc 2d 617).

The motion was argued extensively before Justice Joslin in Supreme Court on June 21, 2000. Defendant proffered affidavits, which, the court noted, would be appropriate on a motion for summary judgment. Plaintiffs sought denial of the motion to dismiss and discovery from defendant to enable them to determine whether defendant was acting as a Law Guardian or a guardian ad litem for purposes of applying *Marquez v Presbyterian Hosp. in City of N.Y.* (*supra*). The court converted

the motion to one for summary judgment, permitted amended pleadings, and declined to address plaintiffs' discovery request at that time.

The converted summary judgment motion was argued extensively on December 20, 2000. The court queried plaintiffs' counsel about standing, asking why the child's claim was not being brought by a disinterested person. Plaintiffs' attorney maintained that many factual issues had been raised and asserted that, "in the face of evidence to the contrary, [defendant] took the position that her client's health and well being was not damaged by her association with the noncustodial parent." Defendant argued that the pleadings fail to state a cause of action. Ultimately, the court orally granted the converted summary judgment motion, dismissing the complaint with prejudice without costs.

This appeal ensued.

## II

### STANDING

■ Plaintiffs contend on appeal that plaintiff has standing to bring a claim on behalf of the child pursuant to CPLR 1201. The court did not explicitly rule on the argument made by defendant in her motion to dismiss that plaintiff cannot bring an action on behalf of the child against the Law Guardian because plaintiff and the Law Guardian are adverse parties. The court should have granted the motion on that ground.

Under most conditions, CPLR 1201 allows a parent to serve as a child's guardian in an action. "Unless the court appoints a guardian ad litem, an infant shall appear by * * * a parent having legal custody * * *. A person shall appear by his guardian ad litem if * * * the court so directs because of a conflict of interest or for other cause" (CPLR 1201). In the instant case, Supreme Court noted that the action was brought by the infant through one of the parties, who had her own adversarial interest in the action.

Although in enacting CPLR 1201 "the Legislature demonstrated a preference for natural guardians" (*Stahl v Rhee,* 220 AD2d 39, 44; *see, Matter of Palmiere,* 284 AD2d 965, *lv denied* 97 NY2d 601), "[a] parent may be removed as natural guardian if he or she has an interest adverse to the infant * * *, or if the infant's natural guardians have irreconcilable differences with each other" (*Stahl v Rhee, supra* at 44; *see also, Caban v 600 E. 21st St. Co.,* 200 FRD 176, 181 [ED NY 2001]). At the

time the complaint in the instant action was filed, plaintiff was still in litigation with the father, attempting to suspend visitation with him because of alleged second-hand smoke. She clearly had an interest in disputing defendant's opinion, which supported visitation with the father, and she had an interest adverse to the child's interest in maintaining a relationship with both parents. Here, defendant's duty was to the child, not to either parent.

If plaintiff's objection to defendant's independent judgment was not apparent on the face of the pleadings, it has been overwhelmingly shown by the additional submissions after the motion was converted to one for summary judgment. A child is entitled to a relationship with both parents unless it is shown to be contrary to the child's best interests (see, Braiman v Braiman, 44 NY2d 584, 589). Given the history set forth above, there is no question of fact whether plaintiff obstructed the relationship of the child with the father. Family Court's order of June 8, 1998 was based on testimony of the court-appointed psychologist, medical records, and testimony of the parties and other witnesses whose credibility the court evaluated. Plaintiff's animus toward the court and defendant is incontrovertible. The issue whether plaintiff may bring this action on behalf of the child is more properly framed in terms of whether plaintiff has a conflict with the child, in view of the fact that ordinarily it is in a child's best interests to have a relationship with the noncustodial parent, and one of the duties of the Law Guardian is to attempt to foster that relationship if the relationship is not contrary to the child's best interests. Plaintiff failed to establish at the hearing in Family Court that the relationship with the father was harmful, but that remains her fixed view. Thus, plaintiff cannot act as guardian for the child in this action.

Nor does plaintiff have standing to bring the action individually because she is a third party who was not in privity with the Law Guardian. In New York, " 'absent fraud, collusion, malicious acts or other special circumstances, an attorney is not liable to third parties, not in privity, for harm caused by professional negligence' " (Conti v Polizzotto, 243 AD2d 672, quoting Estate of Spivey v Pulley, 138 AD2d 563, 564). Although the privity requirement has been relaxed to a limited extent to allow recovery in malpractice actions against accountants or other professionals (see, Viscardi v Lerner, 125 AD2d 662, 664), New York courts otherwise have adhered to the requirement unless there is a showing of a "relationship so close as to ap-

proach that of privity" (*Prudential Ins. Co. of Am. v Dewey, Ballantine, Bushby, Palmer & Wood*, 80 NY2d 377, 382, *rearg denied* 81 NY2d 955; *see, Andrewski v Devine*, 280 AD2d 992, 992-993 [finding that mother cannot sue her own attorney for malpractice on behalf of her children because no attorney-client relationship exists between the children and the attorney representing the mother]). Therefore, plaintiff lacks standing to bring this malpractice action against defendant, either on behalf of the child or individually.

## III

### MERITS

■ The sole reported decision in New York on the appropriate legal standard for evaluating a Law Guardian's representation is *Marquez v Presbyterian Hosp. in City of N.Y.* (159 Misc 2d 617, *supra*). That case involved legal malpractice claims by the parents charged with sexual abuse of their child against the child's Law Guardians, brought by the parents individually and on behalf of the child. Justice Friedman in a thoughtful opinion distinguished the roles of Law Guardians as advocates and as guardians and concluded that in most cases Law Guardians act as advocates. He noted, however, that for very young children the function of a Law Guardian may differ little from that of a guardian ad litem, quoting *Matter of Scott L. v Bruce N.* (134 Misc 2d 240, 243; *see, Marquez v Presbyterian Hosp. in City of N.Y., supra* at 624). Justice Friedman noted that the Court of Appeals in *Braiman v Braiman* (*supra* at 591) suggested appointment of a guardian ad litem to assist the Court in resolving a difficult custody issue involving children who were six and seven years old (*see, Marquez v Presbyterian Hosp. in City of N.Y., supra* at 624).

Justice Friedman concluded that, while the ordinary standard for legal malpractice might be the appropriate standard for a Law Guardian acting as an advocate, a different standard should apply where the Law Guardian is acting as a guardian ad litem so that the Law Guardian may exercise truly independent judgment. He concluded that the appropriate standard in that situation is whether the Law Guardian failed to act in good faith in exercising discretion or failed to exercise any discretion at all.

Although not addressed by the parties, we deem it appropriate to consider the law in sister states in analyzing the appropriate legal standard for evaluating the conduct of a Law

Guardian in a custody or visitation dispute involving a child under three years of age. Were we to reach the merits of this appeal, we would find persuasive the analysis of other courts that the Law Guardian on these facts has absolute quasi-judicial immunity for acts within the scope of her appointment.

Most courts that have considered suits by disgruntled parents against attorneys appointed by courts to protect children in custody disputes have granted, on public policy grounds, absolute quasi-judicial immunity to the attorneys for actions taken within the scope of their appointments (see, Cok v Cosentino, 876 F2d 1, 3; Myers v Morris, 810 F2d 1437, 1466, cert denied 484 US 828; Kurzawa v Mueller, 732 F2d 1456, 1458; Perigo v Wiseman, 11 P3d 217, 217-218 [Okla]; Paige K. B. v Molepske, 219 Wis 2d 418, 427, 580 NW2d 289, 293; Billups v Scott, 253 Neb 287, 293, 571 NW2d 603, 607; West v Osborne, 108 Wash App 764, 774, 34 P3d 816, 822; Winchester v Little, 996 SW2d 818, 827 [Tenn], cert denied 528 US 1026; Delcourt v Silverman, 919 SW2d 777, 786 [Tex], cert denied 520 US 1213, reh denied 520 US 1283; State ex rel. Bird v Weinstock, 864 SW2d 376, 377-378 [Mo]; Leary v Leary, 97 Md App 26, 40, 627 A2d 30, 36; Penn v McMonagle, 60 Ohio App 3d 149, 152, 573 NE2d 1234, 1237, jurisdictional mot overruled 58 Ohio St 3d 704, 569 NE2d 512; Delbridge v Office of Pub. Defender, 238 NJ Super 288, 299-300, 569 A2d 854, 860, affd sub nom. A.D. v Franco, 297 NJ Super 1, 687 A2d 748, certification denied 135 NJ 467, 640 A2d 849, cert denied sub nom. Delbridge v Franco, 513 US 832; cf., Fleming v Asbill, 42 F3d 886, 890).

A foundation for many of those decisions is the holding by the United States Supreme Court that "the common law provided absolute immunity from subsequent damages liability for all persons—governmental or otherwise—who were integral parts of the judicial process" (Briscoe v LaHue, 460 US 325, 335). Most of the cases that have held court-appointed representatives of children in custody disputes to be integral parts of the judicial process have concerned attorneys appointed as guardians ad litem rather than as Law Guardians, but in New York the attorneys customarily are appointed as Law Guardians (see, Family Ct Act §§ 241, 249; cf., CPLR 1201, 1202). In determining whether immunity is appropriate, courts have analyzed the function performed by the representative to ascertain whether the representative is primarily an aid to the court in determining the best interests of the child or an advocate for the child in articulating the child's wishes (see,

*e.g., Paige K. B. v Molepske, supra,* 219 Wis 2d, at 427-428, 580 NW2d, at 293; *Leary v Leary, supra,* 97 Md App, at 40-41, 627 A2d, at 36-37). The line is not always easily drawn, and attorneys involved may be unclear about their roles. A study reported in the Yale Law Journal indicates widespread differences in the views of 18 court-appointed attorneys in custody cases concerning their function therein and discrepancies between their stated understanding of their function and their actions (*see,* Note, *Lawyering for the Child: Principles of Representation in Custody and Visitation Disputes Arising from Divorce,* 87 Yale LJ 1126, 1142-1153). Whatever label is used, it is clear in this case that the Law Guardian could not be acting as an advocate for the child in articulating the child's wishes because defendant's last appointment terminated when the child was less than three years old. Necessarily, defendant was appointed to use her skill and judgment to aid the court in deciding what visitation was in the child's best interests.

The Supreme Court of Wisconsin has stated that, for a guardian ad litem (GAL) to perform his or her duties in a proper manner, the GAL

> "must be allowed to independently consider the facts of a case and advocate the best interests of the child, free from the threat of harassment for retaliatory litigation. Opening the door to negligence liability for GALs appointed under Wis. Stat. § 767.045 would likely result in a decline in the number of attorneys willing to serve as GALs in child custody proceedings. In addition, fear of liability could warp the judgment of those GALs who are appointed toward the appeasement of disappointed parents or children and away from protecting the best interests of the child" (*Paige K. B. v Molepske, supra,* 219 Wis 2d, at 433-434, 580 NW2d, at 296, citing *Short v Short,* 730 F Supp 1037, 1039; *see, State ex rel. Bird v Weinstock, supra* at 386).

The Supreme Court of Wisconsin continued that,

> "without the assistance and impartial judgment of a GAL, the [trial] court would have no practical or effective means to assure itself that all of the essential facts have been presented untainted by the self-interest of the parents and children [*see, State ex rel. Bird v Weinstock, supra* at 384]. Absolute

immunity is necessary in this case to avoid the harassment and intimidation that could be brought to bear on GALs by those parents and children who may take issue with any or all of the GAL's actions or recommendations" (*Paige K. B. v Molepske, supra,* 219 Wis 2d, at 434, 580 NW2d, at 296; see, *Tindell v Rogosheske,* 428 NW2d 386 [Minn]).

That court further wrote:

"We therefore conclude that, from a public policy perspective, it is better to have a diligent, unbiased, and objective advocate to assist the court in determining and protecting the best interests of the child than it is to assure that the minor child may later recover damages in tort. We also note, as did the court of appeals, that a number of mechanisms, aside from civil liability, exist to prevent and punish abuse, misconduct, and irresponsibility on the part of a GAL appointed under Wis. Stat. § 767.045. First, the GAL must be an attorney admitted to practice in this state, * * * who is therefore bound by, and subject to reprimand for violating, the Rules of Professional Conduct. * * * Second, the court is not bound by, and may modify or reject, the GAL's recommendation. * * * Finally, and most importantly, the appointing court oversees the conduct of the GAL, and may on its own, or at the request of a parent, remove and replace the GAL. * * * In overseeing the conduct of a GAL, the [trial] court plays a vital role, for in a custody dispute, the [trial] court must be the vanguard for the best interests of the child" (*Paige K. B. v Molepske, supra,* 219 Wis 2d, at 434-435, 580 NW2d, at 296 [citations omitted]).

The reasoning of the Supreme Court of Wisconsin is persuasive. The record in this case illustrates why quasi-judicial immunity is needed. Available remedies were not utilized. No request to the court for replacement of the Law Guardian was ever made and no appeal was perfected by plaintiff from any order made by Judge Rosa. Nevertheless, plaintiff brought two meritless lawsuits against Judge Rosa, and she brought this lawsuit against defendant, who was required to provide her own defense. Law Guardians are now compensated in New York for services in trial courts at the rate of $40 per hour for in-court time and $25 per hour for out-

of-court time (*see,* Judiciary Law § 35 [3]), as are attorneys appointed to represent indigents under County Law article 18-B, except in death penalty cases (*see,* County Law § 722-b).

According to news reports, concern about the availability of attorneys to serve at those rates and about the quality of representation provided led Governor Pataki and legislative leaders to agree that the rates should be raised, and a three-person commission was appointed to make recommendations (*see,* Wise, *Assigned Counsel Wins Case and Higher Rates,* NYLJ, Jan. 18, 2001, at 1, col 4; Caher, *Committee Proposes Indigent Defense Plan,* NYLJ, July 10, 2001, at 1, col 3; Caher, *Budget for Judiciary Approved Unaltered,* NYLJ, Aug. 6, 2001, at 1, col 5). Solving the problem has been made more difficult by the financial consequences of the attack on the World Trade Center on September 11, 2001 (*see,* Fritsch, *Pataki Rethinks his Promise of a Raise for Lawyers to the Indigent,* New York Times, Dec. 24, 2001, at F1, col 2). Exposure of attorneys to tort liability to those they have been appointed to represent has not been mentioned in the cited articles as a factor affecting the willingness of qualified attorneys to accept appointments, but it is apparent that such exposure would exacerbate the problem. At least with respect to a Law Guardian appointed to represent a young child in a visitation dispute between parents, that disincentive is against public policy and should be eliminated. We agree with the Supreme Court of Wisconsin that there are other available remedies if a Law Guardian is derelict in performing his or her duties.

## IV

### PART 130 COSTS

■ Defendant asserts on her cross appeal that Supreme Court erred in refusing to grant her judgment for out-of-pocket costs of $5,000 on the ground that plaintiffs' suit is frivolous (*see,* 22 NYCRR 130-1.1 [a], [c]). Because New York appellate courts have not previously addressed the issues raised in this case, we decline to grant defendant judgment.

## V

### CONCLUSION

The court properly dismissed the complaint but should have done so on the ground that plaintiff lacks standing to bring an action either on behalf of her child or individually against a

Law Guardian appointed to represent the child in a visitation dispute between the child's parents. Accordingly, we conclude that the order should be affirmed.

WISNER, KEHOE, GORSKI and LAWTON, JJ., concur.

Ordered that the order so appealed from be and the same hereby is unanimously affirmed, with costs to defendant.