PAUL CARRUBBA ET AL. *v.* EMILY J. MOSKOWITZ
(AC 22962)

Lavery, C. J., and Schaller and Hennessy, Js.

Argued March 20, 2003—officially released February 3, 2004

*George W. Kramer*, for the appellants (plaintiffs).

*Robert J. Kor*, for the appellee (defendant).

*Opinion*

SCHALLER, J. The plaintiffs, Paul Carrubba and his minor son, Matthew Carrubba, appeal from the judg-

ment of the trial court dismissing their action. On appeal, the plaintiffs claim that the court improperly (1) determined that the defendant, Emily J. Moskowitz, an attorney for Matthew Carrubba, was immune from suit for torts committed in her capacity as a court-appointed attorney and (2) determined that Paul Carrubba lacked standing to bring a legal malpractice claim against the defendant. We affirm the judgment of the trial court.

The following facts are relevant to the resolution of the plaintiffs' appeal. In the prior marital dissolution action between Paul Carrubba and his former wife, *Carrubba* v. *Carrubba*, Superior Court, judicial district of Hartford, Docket No. 541518 (September 2, 1994), the defendant served as court-appointed counsel for the minor children, Jessica Carrubba and Matthew Carrubba. The marriage was dissolved on February 11, 1997. On November 2, 1998, in a postjudgment motion, Paul Carrubba sought to disqualify the defendant.[1] The court denied the motion.

On November 13, 2000, the plaintiffs commenced the present action by filing a two count complaint. In the first count, the plaintiffs claimed that the defendant intentionally or negligently had caused Paul Carrubba to suffer emotional distress. In the second count, Matthew

---

[1] Paul Carrubba sought to disqualify the defendant because (1) Matthew Carrubba's therapist had indicated to Paul Carrubba that it may not have been in the child's best interest for the defendant to represent him, (2) the defendant had verbally insulted Paul Carrubba, (3) the defendant had a conflict of interest because the law firm of Berman, Bourns and Currie, the same firm that represented Paul Carrubba's former wife, Andrea Carrubba, represented the defendant as a client, (4) the defendant had acted as a de facto guardian ad litem as opposed to an attorney, (5) the defendant had recommended that Paul Carrubba seek counseling prior to Matthew Carrubba's return, (6) the defendant had misrepresented that Matthew Carrubba was doing well at home with Andrea Carrubba, (7) the defendant improperly stated that the Institute of Living, a mental health facility in Hartford, had requested her to terminate Paul Carrubba's parental rights and (8) the defendant was biased against Paul Carrubba.

Carrubba, through his father and next friend, Paul Carrubba, alleged legal malpractice against the defendant.[2] On December 12, 2000, the defendant filed a motion to dismiss the action. The court granted the defendant's motion as to both counts and subsequently denied the plaintiffs' motion to reargue. The plaintiffs then filed the present appeal. Additional facts will be provided as necessary.

I

The plaintiffs first claim that the court improperly determined that the defendant was immune from suit for claims that, in her capacity as a court-appointed attorney for the minor, Matthew Carrubba, she had caused Paul Carrubba to suffer emotional distress. To resolve the claim, we must determine, (1) as a matter of first impression, whether attorneys appointed pursuant to General Statutes § 46b-54 are entitled to immunity, (2) the contours of that immunity and (3) the proper procedural vehicle for raising such immunity as a defense. We conclude that attorneys appointed pursuant to § 46b-54 are entitled to qualified quasi-judicial immunity, and that such immunity is properly pleaded as a special defense and the issue raised by using either a motion to strike or a motion for summary judgment.

The following additional facts are necessary for our resolution of the plaintiffs' claim. In its memorandum of decision dismissing the plaintiffs' complaint, the trial court determined that, with respect to the emotional

---

[2] The plaintiffs alleged that the defendant had deviated from the standard of care for attorneys representing minor children by (1) failing to advocate Matthew Carrubba's position and, instead, acting as a de facto guardian ad litem, and (2) abandoning Matthew Carrubba as a client. Consequently, the plaintiffs alleged that Matthew Carrubba was denied his right to legal representation, suffered the effects of the depletion of his father's assets and sustained emotional distress. The plaintiffs also alleged that his educational progress was hindered.

distress count, the defendant was judicially immune from suit. The court supported that conclusion by relying on the reasoning set forth in *Whitney* v. *Taplin*, Superior Court, judicial district of Fairfield, Docket No. 339190 (May 28, 1999) (24 Conn. L. Rptr. 610) (finding that judicial immunity extends to guardians ad litem), and by analogizing the public policy reasons surrounding immunity for prosecutors to the public trust in guardians ad litem. Specifically, the trial court in the present case reasoned that, like prosecutors, guardians ad litem should be shielded from litigation to preserve the guardian's independent judgment. Significantly, the trial court went on to state that attorneys for minor children appointed under § 46b-54,[3] like guardians ad litem, should be granted judicial immunity for their actions taken during the representation of a minor child.

We agree with the trial court that attorneys appointed to represent minor children, pursuant to § 46b-54, fulfill a role that is closely related to the role of a guardian ad litem appointed pursuant to General Statutes § 45a-132. Our review of the issue leads us to the conclusion that we should extend immunity to attorneys appointed

[3] General Statutes § 46b-54 provides: "(a) The court may appoint counsel for any minor child or children of either or both parties at any time after the return day of a complaint under section 46b-45, if the court deems it to be in the best interests of the child or children. The court may appoint counsel on its own motion, or at the request of either of the parties or of the legal guardian of any child or at the request of any child who is of sufficient age and capable of making an intelligent request.

"(b) Counsel for the child or children may also be appointed on the motion of the court or on the request of any person enumerated in subsection (a) of this section in any case before the court when the court finds that the custody, care, education, visitation or support of a minor child is in actual controversy, provided the court may make any order regarding a matter in controversy prior to the appointment of counsel where it finds immediate action necessary in the best interests of any child.

"(c) Counsel for the child or children shall be heard on all matters pertaining to the interests of any child, including the custody, care, support, education and visitation of the child, so long as the court deems such representation to be in the best interests of the child."

pursuant to § 46b-54 under a theory of qualified quasi-judicial immunity.

## A

At the outset, a brief review of the history of judicial immunity will facilitate our discussion. "The common law recognized a judicial immunity, which protected judges, jurors and grand jurors, members of courts-martial, private arbitrators, and various assessors and commissioners. That immunity was absolute, but it extended only to individuals who were charged with resolving disputes between other parties or authoritatively adjudicating private rights. When public officials made discretionary policy decisions that did not involve actual adjudication, they were protected by quasi-judicial immunity, which could be defeated by a showing of malice, and hence was more akin to what we now call qualified, rather than absolute, immunity." (Internal quotation marks omitted.) *Kalina* v. *Fletcher*, 522 U.S. 118, 132, 118 S. Ct. 502, 139 L. Ed. 2d 471 (1997) (Scalia, J., concurring). In recent times, the United States Supreme Court repeatedly has recognized that it is not the judicial *office*, but instead the judicial *function* that requires protection. See *Westfall* v. *Erwin*, 484 U.S. 292, 296 n.3, 108 S. Ct. 580, 98 L. Ed. 2d 619 (1988); *Harlow* v. *Fitzgerald*, 457 U.S. 800, 810–12, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). Consequently, judicial immunity has been extended to various individuals whose adjudicatory functions or other involvement with the judicial process has been deemed to warrant protection from harassment, intimidation or other interference with impartial decision making. See *Imbler* v. *Pachtman*, 424 U.S. 409, 431, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976) (immunity extended to state prosecutor); see also *Moses* v. *Parwatikar*, 813 F.2d 891 (8th Cir.) (immunity extended to court-appointed psychiatrist), cert. denied, 484 U.S. 832, 108 S. Ct. 108, 98 L. Ed. 2d 67 (1987). The purpose of extending immunity to persons who perform

an adjudicatory function, or those who have other involvement with the judicial process, is to allow such individuals to engage in fearless decision making for the benefit of the public. See *Pierson* v. *Ray*, 386 U.S. 547, 554, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967).

When determining which officials perform functions that might justify an exemption from liability, the United States Supreme Court has undertaken an "inquiry into the immunity historically accorded the relevant official at common law and the interests behind it." (Internal quotation marks omitted.) *Antoine* v. *Byers & Anderson, Inc.*, 508 U.S. 429, 432, 113 S. Ct. 2167, 124 L. Ed. 2d 391 (1993). We will therefore undertake a focused review of the role that attorneys for minor children play in dissolution and custody actions to determine whether the roles that they serve are "closely associated with the judicial process." *Cleavinger* v. *Saxner*, 474 U.S. 193, 200, 106 S. Ct. 496, 88 L. Ed. 2d 507 (1985).

B

With the foregoing principles in mind, we now turn to the first question presented under the facts and circumstances of this case; that is, whether attorneys appointed pursuant to § 46b-54 are entitled to immunity. In dissolution actions, § 46b-54 (a) and (b) permit a court to appoint an attorney for a minor child. The underlying purpose of the appointment is to serve the best interest of the child. See General Statutes § 46b-54 (a). The appointment of counsel, therefore, lies firmly within the trial court's discretion while resting on the best interest of the child. See General Statutes § 46b-54 (c); see also *Salvio* v. *Salvio*, 186 Conn. 311, 325 n.12, 441 A.2d 190 (1982); *Ridgeway* v. *Ridgeway*, 180 Conn. 533, 540, 429 A.2d 801 (1980). The appointment ensures "independent representation of the child's interests, and such representation must be entrusted to the professional judgment of appointed counsel

within the usual constraints applicable to such representation." *Schult* v. *Schult*, 241 Conn. 767, 778, 699 A.2d 134 (1997). Despite the appointment, the court retains broad discretion in determining what is in the child's best interest. Id., 777.

Typically, an attorney representing a minor "is just that, an attorney, arguing on behalf of his or her client . . . ." *Ireland* v. *Ireland*, 246 Conn. 413, 438, 717 A.2d 676 (1998); see also *Newman* v. *Newman*, 235 Conn. 82, 96, 663 A.2d 980 (1995). The appointment of counsel under § 46b-54, however, *also* implicates issues concerning the child's best interest because the attorney is appointed by the court and that appointment can be terminated at the court's discretion.[4] That results in the creation of overlapping roles for the court-appointed attorney: (1) acting as the child's counsel and (2) acting to support the best interest of the child, similar to guardians ad litem.[5] The hybrid nature of the attorney's role

---

[4] Despite the label of "advocate" affixed to attorneys representing children in dissolution actions, some courts have suggested that such advocacy roles in dissolution actions deserve immunity irrespective of the label of the role because the attorney functions on behalf of the court. See, e.g., *Collins* v. *Tabet*, 111 N.M. 391, 806 P.2d 40 (1991). In *Collins*, the court analyzed the function of the attorney under the specific circumstances of that case and stated that "[w]here the guardian ad litem is acting as an advocate for his client's position—representing the pecuniary interests of the *child* instead of looking into the fairness of the settlement (for the child) [of a medical malpractice action] on behalf of the *court*—the basic reason for conferring quasi-judicial immunity on the guardian does not exist. In that situation, he or she functions in the same way as does any other attorney for a client—advancing the interests of the client, not discharging (or assisting in the discharge of) the duties of the court." (Emphasis in original.) Id., 399.

[5] In *Ridgeway* v. *Ridgeway*, supra, 180 Conn. 539, our Supreme Court alluded to the similar functions of those two types of appointees. There, our Supreme Court considered whether the trial court's failure to appoint a guardian ad litem constituted an abuse of discretion. Id., 539–40. The Supreme Court determined that the trial court had not abused its discretion because appointment of a guardian ad litem, like the appointment of an attorney under General Statutes § 46b-54, is discretionary. *Ridgeway* v. *Ridgeway*, supra, 539–40. If the trial court did not appoint counsel under § 46b-54, then it stood to reason that the trial court must have concluded, in its discretion, that the child's best interests were being represented. On

in those situations, therefore, requires that liability for improper conduct should be measured by a standard different from that applicable to traditional "counsel" for a party. A proper standard must strike a balance between protecting minors from malpractice and other injuries resulting from improper representation, and protecting the attorney against attacks concerning the attorney's proper exercise of discretion.

We now address the specific question presented, that is, whether attorneys appointed pursuant to § 46b-54 are entitled to immunity protection. Our Supreme Court's opinion in *Spring* v. *Constantino*, 168 Conn. 563, 362 A.2d 871 (1975), is instructive in determining this issue. In *Spring*, our Supreme Court considered whether an appointed public defender was immune from suit on the basis of judicial immunity.[6] Id., 564. The defendant in that case argued that judicial immunity should be extended to public defenders assigned to represent indigent clients on the ground "that a public defender is appointed by the judiciary to a judicial office and that in performing his function he is, as is a state's attorney or prosecutor, in the performance of an integral part of the judicial process." (Internal quotation marks omitted.) Id., 566. The court considered the public policy reasons surrounding the extension of the doctrine to prosecutors "for acts done in [their] official capacity on grounds that [their] office is vested with a vast quantum of discretion which is necessary for the vindication of the public interest." (Internal quotation marks omitted.) Id., 565. The court concluded that the prosecutor,

the basis of that similarity, we determine that the public policy concerns surrounding the extension of qualified quasi-judicial immunity to guardians ad litem, as expressed by other jurisdictions, also is applicable to attorneys appointed to represent minor children under § 46b-54.

[6] The defendant in *Spring*, a public defender, also sought immunity on the basis of common-law sovereign immunity and statutory sovereign immunity under General Statutes § 4-165. *Spring* v. *Constantino*, supra, 168 Conn. 564–65.

unlike the public defender, is an officer of the state "under a duty to see that *impartial* justice is done to the accused as well as to the state . . . ." (Citations omitted; emphasis added.) Id., 567. By comparison, the court noted that the function of the public defender is to represent his client, not the state, and to provide the client with independent representation. For that reason alone, the court held that public defenders, for judicial immunity purposes, functioned like privately retained attorneys. The court ultimately declined to extend immunity to public defenders on the theory of judicial immunity.[7]

Guided by the *Spring* court's rationale for denying judicial immunity to public defenders, we determine that public defenders serve a different function, for purposes of immunity, from that of attorneys for minor children appointed pursuant to § 46b-54. Unlike public defenders, an attorney for minor children serves at the discretion of the court, not the client. The appointed attorney for minor children has substantially less independence in representing his minor client than does a public defender. See *Schult* v. *Schult*, supra, 241 Conn. 780 (court may preclude attorney from advancing argument that conflicts with best interest of child as represented by guardians ad litem.) That is, an attorney appointed pursuant to § 46b-54 functions in a manner vastly different from that of a privately retained attorney or public defender. We agree with the views on that issue expressed by other courts that have stated that "[w]hen a statute gives a court the power to appoint an attorney for children in [dissolution or] custody disputes, that advocate must represent the children's interests alone. In so doing, the attorney is not to take a

---

[7] Although our Supreme Court did not extend immunity to public defenders on any of the theories advanced by the defendant in *Spring* v. *Constantino*, supra, 168 Conn. 563, in 1976, the legislature, through the enactment of Public Acts 1976, No. 76-371, § 2, added public defenders to the definition of "state officers and employees" for purposes of statutory sovereign immunity pursuant to General Statutes § 4-165.

passive role but should present all evidence available concerning the child's *best interests*. The attorney is not simply to *parrot* the child's expressed wishes. . . . Thus, this obligation imposes a higher degree of objectivity on a child's attorney than that for an attorney representing an adult." (Citation omitted; emphasis added.) *In re Marriage of Barnthouse*, 765 P.2d 610, 612 (Colo. App. 1988), cert. denied, 490 U.S. 1021, 109 S. Ct. 1747, 104 L. Ed. 2d 184 (1989).

Public policy reasons have been asserted to support the idea that attorneys representing minor children must exercise good faith in reaching an independent position on the child's behalf. See *Schult* v. *Schult*, supra, 241 Conn. 780; *Marquez* v. *Presbyterian Hospital*, 159 Misc. 2d 617, 622–24, 608 N.Y.S.2d 1012 (1994). The required independence results from the fact that young children are incapable of intellectually expressing their views. For that judgment to be truly independent, the attorney must not be threatened by the possibility that differences of opinion with the child's parents may give rise to tort litigation. The threat of a lawsuit by the parents may serve to intimidate and to discourage the attorney from taking appropriately forceful positions on behalf of the child, but adverse to the interests of either, or both, of the child's parents. For those reasons, we consider attorneys appointed under § 46b-54 to function within the judicial process in a manner analogous to that of a prosecutor for purposes of immunity.

The plaintiffs argue that the public policy reasons for extending immunity should not apply to attorneys for minor children because they merely are "advocates." Designating an attorney appointed under § 46b-54 as an "advocate" is an oversimplification and does not accurately describe the variety of the functions performed. Those attorneys serve as counselors, advisers, negotiators, conciliators and investigators. More than

advocates, those attorneys also must attend to the special emotional needs of their young clients. See *Bluntt v. O'Connor*, 291 App. Div. 2d 106, 117, 737 N.Y.S.2d 471 (attorney appointed to represent child in custody matter could not act *solely* as advocate of child client because child was younger than three years old), leave to appeal denied, 98 N.Y.2d 605, 773 N.E.2d 1017 (2002); *Matter of Scott L.* v. *Bruce N.*, 134 Misc. 2d 240, 243, 509 N.Y.S.2d 971 (1986) (functions of attorney, guardian may overlap in representation of very young children); *Marquez* v. *Presbyterian Hospital*, supra, 159 Misc. 2d 624. They perform those functions to ascertain their client's true desires and interests not only for the benefit of the child, but also for the benefit of the court. The presence of a court-appointed attorney not only provides a reliable and unbiased source of information, but also helps to ensure that the best interest of the child takes priority over the wishes of the child.

Without the appointment of independent counsel for minor children, the court may be unaware of important interests of children in the course of proceedings that often are contentious. One commentator has noted that the attorney for the minor child assists the court in ascertaining the child's true interests because (1) the child often feels more comfortable talking with the attorney than with others because the interview can take place in a familiar setting rather than in a courthouse, (2) the attorney acts as an independent fact finder and can assist the court in determining relevant evidence free from the parents' bitterness and (3) the child's attorney has the opportunity to interview the child's parents before they have been "coached" by their attorneys to determine the true demeanor of the parents. See K. Landsman, "Lawyering for the Child: Principles of Representation in Custody and Visitation Disputes Arising from Divorce," 87 Yale L. J. 1126, 1136 n.47 (1978).

In reality, the distinction between a guardian ad litem, appointed under § 45a-132, and an attorney appointed under § 46b-54, is blurred. Often, appointed attorneys for the minor child will speak with social workers, counsel for the parents and teachers, as well as family and friends, in determining the child's true interests and wishes. Due to the nature of the events, sometimes the child may not honestly represent his wishes to the attorney out of fear of harming either parent. Id., 1147. In such instances, the attorney, like a guardian ad litem, must determine what is in the child's interest. That is, the attorney must exercise judgment to identify the child's interests due to the child's limitations in expressing his or her views.

Having considered those factors, we conclude that an attorney appointed under § 46b-54 has a hybrid role of advocate (attorney) and proponent (guardian) of the child's interests. See *Bradt* v. *White*, 190 Misc. 2d 526, 532, 740 N.Y.S.2d 777 (2002). The balancing of those competing roles in a particular case will depend on the age and maturity of the child. Id.

The threat of civil liability would seriously impair the ability of a court-appointed attorney to represent the child client. As a result, the ability of the court to perform its judicial duties also would be impaired. Because those appointed attorneys exercise discretion and make critical judgments on behalf of their clients and the court, they must be protected by judicial immunity from needless collateral litigation that would undermine their good faith efforts to represent the interests of children, including the zealous pursuit of positions adverse to those of the parents. Failing to extend immunity would be contrary to the strong public policy requiring the appointed attorney to exercise good faith in reaching an "independent" position on the child's behalf.

## C

Although we have concluded that attorneys appointed by the court pursuant to § 46b-54, are entitled to some type of judicial immunity, we must define the contours of that immunity. "Absolute immunity . . . is strong medicine . . . ." (Internal quotation marks omitted.) *Lombard* v. *Edward J. Peters, Jr., P.C.*, 252 Conn. 623, 631, 749 A.2d 630 (2000). The category of persons to whom absolute judicial immunity extends is limited. Id. "The protection extends only to those who are intimately involved in the judicial process, including judges, prosecutors and judges' law clerks. Absolute judicial immunity, however, does not extend to every officer of the judicial system. . . . Moreover, it is important to note that even judges do not enjoy absolute immunity for administrative as opposed to judicial actions. . . . [Again] [t]he determination is made using a functional approach." (Citations omitted; internal quotation marks omitted.) Id. The functional approach "assumes that [i]mmunity flows not from rank or title of location within the Government . . . but from the nature of the responsibilities of the individual official." (Internal quotation marks omitted.) Id., 631 n.4.

Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow* v. *Fitzgerald*, supra, 457 U.S. 818. Qualified immunity typically "turns on the objective legal reasonableness of the action . . . assessed in light of the legal rules that were clearly established at the time it was taken . . . ." (Citations omitted; internal quotation marks omitted.) *Anderson* v. *Creighton*, 483 U.S. 635, 639, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). That type of immunity involves immunity from suit and is intended to permit "courts expeditiously to weed out suits which

fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits." *Siegert* v. *Gilley*, 500 U.S. 226, 232, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991).

On the basis of our thorough review of the functions of those appointed attorneys, we conclude that qualified rather than absolute immunity should apply.[8] Appointed

---

[8] We also note that principles of statutory sovereign immunity lend support to the extension of immunity to court-appointed attorneys. It is the settled law of Connecticut that the state is immune from suit unless it consents to be sued. *Lacasse* v. *Burns*, 214 Conn. 464, 468, 572 A.2d 357 (1990). General Statutes § 4-165 provides in relevant part: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment. . . . For the purposes of this section 'scope of employment' shall include, but not be limited to, representation by an attorney . . . *appointed by the court* as a special assistant public defender of an indigent accused . . . ." (Emphasis added.) Because the state can act only through its officers and agents, a suit against "a state officer [or employee] is in effect one against the sovereign state." (Internal quotation marks omitted.) *White* v. *Burns*, 213 Conn. 307, 312, 567 A.2d 1195 (1990).

Connecticut has a clear public policy interest in protecting state officers and employees, as codified within § 4-165. "The manifest legislative intent expressed by chapter 53 [of which § 4-165 is a part] is that an employee is immune where and because the state may be sued, and that the state may be sued in instances where a private person would be liable." *Spring* v. *Constantino*, supra, 168 Conn. 571. That is, the manifest policy interest is the protection of state employees from liability for negligent acts that occur in the course of their appointment or employment. See *Hunte* v. *Blumenthal*, 238 Conn. 146, 153, 680 A.2d 1231 (1996).

General Statutes § 4-141 provides in relevant part: " '[S]tate officers and employees' includes every person elected or appointed to or employed in any office, position or post in the state government, whatever such person's title, classification or function and whether such person serves with or without remuneration or compensation . . . . In addition to the foregoing, 'state officers and employees' includes . . . attorneys appointed by the court as special assistant public defenders . . . ." Thus, § 4-141 on its face makes § 4-165 applicable to attorneys appointed by the court, but limits it to "attorneys appointed as victim compensation commissioners, attorneys appointed by the Public Defenders Services Commission as public defenders, assistant public defenders or deputy assistant public defenders, and attorneys appointed by the court as special assistant public defenders . . . ." General Statutes § 4-141; see also *Lemoine* v. *McCann*, 40 Conn. App. 460,

attorneys are immune from suit with respect to actions taken in furthering the representation of the minor child unless such actions are done with malice, wantonness or an intent to injure. That exception to the qualified quasi-judicial immunity afforded to court-appointed attorneys applies only to actions directed at the minor child and not at his or her parents.

Our Supreme Court has defined malice as acting with an improper or unjustifiable motive. See *Haxhi* v. *Moss*, 25 Conn. App. 16, 19, 591 A.2d 1275 (1991). Additionally, Black's Law Dictionary defines malice as the "intentional doing of a wrongful act without just cause or excuse, with an intent to inflict an injury or under cir-

---

463, 673 A.2d 115, cert. denied, 237 Conn. 904, 674 A.2d 1330 (1996). In the present case, however, we are concerned with court-appointed attorneys for minor children appointed pursuant to General Statutes § 46b-54. Although such attorneys are not specifically listed within § 4-141, we believe that the public policy surrounding the enactment of §§ 4-141 and 4-165 supports the inclusion of attorneys appointed under § 46b-54. See *Hunte* v. *Blumenthal*, supra, 238 Conn. 146 (state licensed foster parents deemed state employees under § 4-141), and Public Acts 1976, No. 76-371, § 2 (in which legislature expanded definition of "state employees and officers" to include public defenders in response to *Spring* v. *Constantino*, supra, 168 Conn. 563).

In further support of extending the definition of "state employees and officers" under § 4-141 to include attorneys appointed under § 46b-54, in Connecticut, court-appointed personnel are considered "arms of the court" and cannot be sued because they are deemed to be acting according to the will of that court. See *Summerbrook West, L.C.* v. *Foston*, 56 Conn. App. 339, 344, 742 A.2d 831 (2000) (receiver of rents appointed by court and deemed arm of court), citing *Links* v. *Connecticut River Banking Co.*, 66 Conn. 277, 284, 33 A. 1003 (1895). Because § 46b-54 requires the court to appoint the attorney and the attorney has a duty to represent the child's wishes to the court on the court's behalf, the attorney should be considered an arm of the court. See *Delcourt* v. *Silverman*, 919 S.W.2d 777, 783–86 (Tex. App. 1996) (statute for appointment of guardian ad litem to advocate for minor's interests provides for absolute immunity for actions pursuant to and within scope of appointment, provided appointment contemplates guardian ad litem acts as extension of court, but guardian ad litem appointed under state rule of civil procedure not entitled to absolute immunity because guardian ad litem appointed under rule of civil procedure does not act as arm of court or perform functions court normally performs), cert. denied, 520 U.S. 1213, 117 S. Ct. 1698, 137 L. Ed. 2d 824 (1997).

cumstances that the law will imply an evil intent." Black's Law Dictionary (6th Ed. 1990). We therefore conclude that, absent a claim that the appointed attorney acted with malice, wantonness or an intent to injure the child, attorneys appointed pursuant to § 46b-54 are immune from suit for their actions taken within the scope of representing a minor child.

In the present case, we have thoroughly reviewed the record. We have found no allegations that would support a conclusion that the defendant acted with malice, wantonness or an intent to injure during her representation of Matthew Carrubba. Accordingly, we conclude that the court properly dismissed the plaintiffs' claims.

## D

Having decided that attorneys appointed to represent children under § 46b-54 are protected by qualified quasi-judicial immunity, we now proceed to address the proper procedural vehicle to raise a claim of that type of immunity.

"A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . Furthermore, whether subject matter jurisdiction exists is a question of law, and our review of the court's resolution of that question is plenary." (Citation omitted; internal quotation marks omitted.) *Berlin Batting Cages, Inc.* v. *Planning & Zoning Commission*, 76 Conn. App. 199, 203–204, 821 A.2d 269 (2003). It is well established that the defense of sovereign immunity implicates subject matter jurisdiction and therefore is properly raised by a motion to dismiss. See *Miller* v. *Egan*, 265 Conn. 301, 313, 828 A.2d 549 (2003). Although there is no definitive appellate authority concerning the issue of whether judicial immunity, as compared to sovereign immunity, implicates a court's subject matter

jurisdiction, it would appear to this court[9] that qualified quasi-judicial immunity, like governmental immunity, should be raised by way of a special defense. See *Westport Taxi Service, Inc.* v. *Westport Transit District,* 235 Conn. 1, 24, 664 A.2d 719 (1995).

In the present case, the defendant raised the immunity defense by filing a motion to dismiss. Ordinarily, such a motion would be improper because, as we have stated, qualified quasi-judicial immunity does not implicate the court's subject matter jurisdiction. The plaintiffs, however, chose to waive any claim of a procedural error. In their brief, the plaintiffs stated: "The trial court dismissed the first count of the plaintiffs' complaint, holding that '[the defendant's] actions in that role should be protected from tort liability.' The issue of judicial immunity, however, does not implicate the court's jurisdiction. The court treated the defendant's motion to dismiss as a motion to strike or a motion for summary judgment. In doing so, the plaintiffs believe the court [acted improperly]. *For the sake of judicial economy, however, the plaintiffs ask the Appellate Court to address the issue of whether attorneys for minor children are entitled to judicial immunity.*" (Emphasis added.)

Both this court and our Supreme Court have waived technical procedural irregularities in the past. For example, in *Fort Trumbull Conservancy, LLC* v. *Alves,* 262 Conn. 480, 483–84, 815 A.2d 1188 (2003), the defendant filed a motion to dismiss the plaintiff's complaint on the ground that the plaintiff had no standing under the Connecticut Environmental Protection Act. Our

---

[9] We are aware that some trial courts have concluded that *absolute* judicial immunity can be raised properly in a motion to dismiss. See *Janicki* v. *Subbloie,* Superior Court, judicial district of New Haven at Meriden, Docket No. 277848 (April 3, 2002) (31 Conn. L. Rptr. 626) (*Skolnick, J.*). In the present case, however, we have determined that court-appointed attorneys are protected by *qualified* quasi-judicial immunity.

Supreme Court held that the trial court improperly had determined that the plaintiff lacked standing. Id., 497. The court, however, stated that "we also conclude that the factual allegations of the complaint were insufficient to support the plaintiff's claims for relief . . . . Accordingly, those claims for relief properly were subject to a motion to strike." Id. Our Supreme Court concluded that although the court improperly had granted the motion to dismiss, with respect to certain of the plaintiff's claims, that was harmless error because those claims were subject to a motion to strike. Id., 501–502.

In *Sullivan* v. *State*, 189 Conn. 550, 457 A.2d 304 (1983), both the plaintiff's decedent and the defendant worked at the state department of transportation. The plaintiff attempted to bring an action pursuant to the exception in the Workers' Compensation Act that allows for additional recovery in cases of negligence in the operation of a motor vehicle. Id., 551. The defendant raised the special defense of immunity pursuant to § 4-165.[10] Id. The trial court granted the defendant's motion to dismiss on the basis of that immunity. Id., 552. Our Supreme Court stated: *"No objection has been raised to the procedure of using a motion to dismiss rather than a motion for summary judgment to obtain a pretrial adjudication of the merits of the special defense of immunity from liability by virtue of General Statutes § 4-165 raised by the defendant. See Practice Book §§ 143 [now § 10-31], 384 [now § 17-49]. We have decided to consider the issues as the parties have presented them to us on their merits."* (Emphasis added.) *Sullivan* v. *State*, supra, 552 n.4; see also *Doe* v. *Board of Education*, 76 Conn. App. 296, 299 n.6, 819 A.2d 289 (2003).

---

[10] General Statutes § 4-165 provides in relevant part that "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment. . . ."

In the present case, the plaintiffs waived any claim of procedural error with respect to the defendant's motion to dismiss. We conclude, however, that ordinarily the proper procedure for utilizing the special defense of qualified quasi-judicial immunity will be by means of either a motion to strike or a motion for summary judgment.

## II

The plaintiffs' final claim is that the court improperly granted the defendant's motion to dismiss when it determined that Paul Carrubba, as next friend of Matthew Carrubba, lacked standing to bring a legal malpractice claim against the defendant.[11] We disagree.

The following facts are necessary to the proper resolution of the plaintiffs' claim. Paul Carrubba brought count two of the complaint on behalf of his son, Matthew Carrubba. The count alleged that during the custody and dissolution action, *Carrubba* v. *Carrubba*, supra, Superior Court, Docket No. 541518, the defendant deviated from the standard of care required by attorneys who represent minor children. In its memorandum of decision, the court concluded that the plaintiff father did not have standing because (1) his interests were adverse to his child's interests and (2) he failed to demonstrate prejudice to his own case.

At the outset, we reiterate the applicable standard of review. "In ruling upon . . . a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . Furthermore,

---

[11] "It has long been the established practice that a minor may bring a civil action only though a guardian or next friend." *Caron* v. *Adams*, 33 Conn. App. 673, 679, 638 A.2d 1073 (1994).

whether subject matter jurisdiction exists is a question of law, and our review of the court's resolution of that question is plenary." (Citation omitted; internal quotation marks omitted.) *Berlin Batting Cages* v. *Planning & Zoning Commission*, supra, 76 Conn. App. 203–204.

"The issue of standing implicates the court's subject matter jurisdiction." (Internal quotation marks omitted.) *Ragin* v. *Lee*, 78 Conn. App. 848, 859, 829 A.2d 93 (2003). "In order for a party to have standing to invoke the jurisdiction of the court, that party must be aggrieved. Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless [one] has, in an individual or representative capacity, some real interest in the cause of action . . . . Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a well-settled twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as is the concern of all the members of the community as a whole. Second, the party claiming aggrievement must successfully establish that the specific personal and legal interest has been specially and injuriously affected by the decision." (Internal quotation marks omitted.) *In re Shawn S.*, 262 Conn. 155, 164–65, 810 A.2d 799 (2002).

We have stated that the only real test to determine whether a person is a proper or improper person to act as a guardian or next friend for a minor is whether that person's interests are adverse to those of the child. *Caron* v. *Adams*, 33 Conn. App. 673, 682, 638 A.2d 1073 (1994). We also have stated that "[i]n child custody proceedings, parents lack the necessary professional

and emotional judgment to further the best interests of their children. Neither parent could be relied on to communicate to the court the children's interests where those interests differed from his or her own. . . . *A parent's judgment is or may be clouded with emotion and prejudice due to the estrangement of husband and wife.* . . . A discretionary statutory appointment of counsel for the child within the auspices of a custody-visitation proceeding does not interfere with a parent's right to control her child's welfare. On the contrary, the appointment of counsel to represent the child's best interests is consistent with the efforts of the parent in promoting the welfare of the child." (Citations omitted; emphasis added; internal quotation marks omitted.) *Taff* v. *Bettcher,* 35 Conn. App. 421, 427–28, 646 A.2d 875 (1994).

In its memorandum of decision, the court relied on *Busby* v. *Barbarula,* Superior Court, judicial district of Stamford-Norwalk, Docket No. 167925 (June 29, 1999) (24 Conn. L. Rptr. 689). In *Busby,* the minor plaintiffs, through their father as next friend, filed a legal malpractice action against their court-appointed attorney. The *Busby* court determined that the interests of the father were adverse to those of the minor plaintiffs; therefore, he was not a proper next friend and, accordingly, lacked standing to bring the action.[12] The trial court in the present action implicitly adopted that reasoning when it determined that Paul Carrubba lacked standing to

---

[12] The court stated: "[The father] is not a proper 'next friend' of the minor plaintiffs, his children, for purposes of bringing this malpractice action against the defendant, the court-appointed counsel in the pending divorce action. Because [the father's] interests are adverse to those of the minor plaintiffs, he cannot be relied upon to communicate his children's interests to the court; his judgment may be 'clouded with emotion and prejudice,' due to his pending divorce. Therefore, [the father] does not have standing to bring this action, thus, the court lacks subject matter jurisdiction. Accordingly, the court, sua sponte, dismisses this action." *Busby* v. *Barbarula,* supra, 24 Conn. L. Rptr. 691.

bring a legal malpractice claim on behalf of Matthew Carrubba against the defendant because his interests were adverse to those of his minor child, Matthew Carrubba.

We agree with the trial court's conclusion that Paul Carrubba's interests were adverse to those of Matthew Carrubba and, therefore, that he was not the proper next friend. The defendant was responsible for undertaking actions that represented the best interest of the minor, Matthew Carrubba, and it was precisely those actions to which Paul Carrubba had objected. If parents could penetrate the shield of immunity merely by bringing suit in the child's name, that tactic would undermine the public policy goals supporting the immunity that we extended in part II. Although the complaint was couched in the traditional language of a legal malpractice case, the substance of the claim was not that the defendant violated the standard of care of lawyers representing a client, but that the defendant improperly exercised her judgment in determining the wishes of Matthew Carrubba due to his infancy.

Of particular importance to our reasoning is the fact that on November 2, 1998, during the dissolution action, *Carrubba* v. *Carrubba*, supra, Superior Court, Docket No. 541518, Paul Carrubba filed a postjudgment motion to disqualify the defendant, which ultimately was denied, based on claims substantially similar to those raised in the present action. For example, in both the motion and the complaint, Paul Carrubba alleged that the defendant had acted as a "de facto" guardian ad litem for Matthew Carrubba and that the defendant "unleashed a barrage of insults" at him. The record also indicates that issues surrounding Matthew Carrubba's custody remain highly contested between the parties and a motion concerning Matthew Carrubba's custody was filed as recently as March 27, 2000, approximately seven months prior to the inception of the present

action. The substance of those facts indicates that although Paul Carrubba, as next friend, brought the malpractice claim on behalf of his minor son, Paul Carrubba actually was bringing the claim on his own behalf to relitigate the same issues raised in his previously denied motion to disqualify the defendant.

Our case law also is clear that a person cannot gain standing by asserting the due process rights possessed by another individual. See *Shaskan* v. *Waltham Industries Corp.*, 168 Conn. 43, 49, 357 A.2d 472 (1975). Thus, once the court finds it appropriate to appoint counsel for a minor child under § 46b-54, that representation is the child's entitlement, not the parent's. Accordingly, we have stated that a parent does not have standing to make claims against a court-appointed attorney who represented his or her minor children during divorce proceedings. See *Taff* v. *Bettcher*, supra, 35 Conn. App. 425–28; *McGinty* v. *McGinty*, 66 Conn. App. 35, 38–39, 783 A.2d 1170 (2001) (holding that parent lacked standing to sue where child's appointed counsel failed to participate in hearing on motion to modify visitation). This also is not a case in which the parent can show aggrievement resulting from his legally protected interest having been adversely affected. For example, we have recognized that the inadequate representation of a child could at least colorably harm the respondent as a parent because it is in that capacity that the best interest of the child must be determined, and the respondent had a stake in the outcome of her motion because whether the court granted it could affect the course of the trial and, ultimately, whether her rights as a parent would be terminated. *In re Shaquanna M.*, 61 Conn. App. 592, 599, 767 A.2d 155 (2001).

The court appointed the defendant to represent Matthew Carrubba's interests. Because Paul Carrubba was asserting a right that did not belong to him, and was effectively bringing a claim of malpractice on his behalf,

he did not have standing to make claims against a court-appointed attorney who represented his minor child during divorce proceedings. The court properly determined that Paul Carrubba lacked standing and properly granted the defendant's motion to dismiss.

The judgment is affirmed.

In this opinion LAVERY, C. J., concurred.

HENNESSY, J., dissenting. I respectfully dissent from the conclusion of the majority that those appointed pursuant to General Statutes § 46b-54 as attorneys for minor children are entitled under the common law to qualified quasi-judicial immunity for actions taken during their representation in such matters. I believe that it is the legislature and not the judiciary that should, if it chooses, exercise its authority to extend immunity to court-appointed attorneys for minors. It is clear that neither the statutes of this state, nor the decisions of this court or our Supreme Court, extend the protections of immunity to court-appointed attorneys for minor children under § 46b-54. Consequently, I perceive the conclusion of the majority to be synonymous with legislating and "[m]ore importantly . . . [as] exceeding our constitutional limitations by infringing on the prerogative of the legislature to set public policy through its statutory enactments." *State* v. *Reynolds*, 264 Conn. 1, 79, 836 A.2d 224 (2003).

The majority begins its analysis with the proposition that the common law recognized a judicial immunity that protected judges from suit when they resolved disputes between parties or adjudicated private rights. Common-law immunity has, in recent times, been extended to those whose adjudicatory functions or other involvement with the judicial process was deemed to warrant protection from harassment, intimidation or other interference with impartial decision making. The

analysis continues that courts have held, in accordance with the common law, that such immunity includes not only judges, but prosecutors as well on the basis of their exercise of discretionary judgment with regard to the evidence presented to them. "It is the functional comparability of their judgments to those of the judge that has resulted in . . . prosecutors being referred to as 'quasi-judicial' officers, and their immunities being termed 'quasi-judicial' as well." *Imbler* v. *Pachtman*, 424 U.S. 409, 423 n.20, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976). It was the need to protect the judge like decision-making function of those who are an integral part of the judicial system, acting in the public interest, that resulted in the granting of immunity to prosecutors. See *Spring* v. *Constantino*, 168 Conn. 563, 565, 362 A.2d 871 (1975).

In contrast, the lack of a judge like decision-making function resulted in our Supreme Court denying the protections of judicial immunity to public defenders. Id., 566–67. It is for that same reason that judicial immunity should be denied to attorneys appointed to represent minors pursuant to § 46b-54. It has been argued that public defenders are an integral part of the judicial process and that "there is a public interest aspect to the public defender system in that it functions to fulfill the constitutional requirement that indigents be ensured competent representation . . . ." (Citations omitted.) Id. Our Supreme Court, however, denied immunity to public defenders, finding that their independent representation of the client and the decisions and judgments emanating from that representation do not present the functional comparability to a judge required to grant public defenders immunity.[1]

---

[1] The legislature, through the enactment of Public Acts 1976, No. 76-371, § 2, added public defenders to the definition of "state officers and employees" for purposes of statutory sovereign immunity pursuant to General Statutes § 4-165.

The majority concludes that public defenders, for purposes of immunity, serve a function different from that of attorneys for minor children appointed pursuant to § 46b-54, and, therefore, that the Supreme Court's reasons for denying immunity to public defenders are not applicable. The majority further concludes that attorneys for children, appointed by the court, serve at the court's discretion and have substantially less independence in representing their clients than public defenders do in representing their clients. See *Schult* v. *Schult*, 241 Conn. 767, 780–81, 699 A.2d 134 (1997). I believe that the role of the attorney for the child, despite the fetters placed on her or him, is more consistent with that of the public defender than that of the prosecutor. The restrictions on the attorney for the child set forth by the majority do not undermine the core responsibility of that office. The role of the attorney for a minor "is limited to the type of representation enjoyed by unimpaired adults. In other words, the attorney for the child is just that, an *attorney*, arguing on behalf of his or her client, based on the evidence in the case and the applicable law." (Emphasis in original.) *Ireland* v. *Ireland*, 246 Conn. 413, 438, 717 A.2d 676 (1998). "The purpose of appointing counsel for a minor child . . . is to ensure independent representation of the child's interests . . . ." (Internal quotation marks omitted.) Id., 436. That independent representation and the attorney's strategic decisions and judgments made incident to that representation do not present the functional comparability to those of the judge. Both public defender and attorney for the child fill the role of adversary, and "his [or her] function does not differ from that of a privately retained attorney." *Spring* v. *Constantino*, supra, 168 Conn. 567.

The immunity proposed by the majority for attorneys appointed to represent minors pursuant to § 45b-54 should be addressed to a lawmaking body. "It is not

our office to legislate." *Colchester Savings Bank* v. *Brown,* 75 Conn. 69, 71, 52 A. 316 (1902).

I would reverse the judgment of dismissal as to count one of the complaint and remand the matter for further proceedings.