OPINION OF THE COURT
Saxe, J.
This appeal, arising in the context of a contentious post-divorce dispute, raises a variety of challenges to the court’s determinations involving custody, visitation and expenses. While the bulk of these issues may be briefly addressed seriatim, we must address at greater length the unresolved question of whether parents who are directed to pay the fees of the attorney appointed to represent the children may raise the defense of legal malpractice to that attorney’s claim for fees. Determination of this issue requires us to decide whether, as defendant father claims, Mars v Mars (19 AD3d 195 [1st Dept 2005], lv dismissed 6 NY3d 821 [2006]) gives him legal standing to assert the legal malpractice defense.
*125 The divorced parents have three children, now ages 17, 14 and 11. In the divorce action, although the parties stipulated to joint custody, it was left to the trial court to direct that plaintiff mother would have primary residential custody in the marital apartment in Manhattan. Substantial further litigation ensued beginning in 2009, when the mother moved for an order allowing her to relocate with the children to Demarest, New Jersey, approximately 12 miles outside Manhattan, and the father responded by moving for a change of custody. The motion court appointed the attorney for the children in this context.
On November 22, 2011, the attorney for the children moved for an order directing the father to pay the outstanding fees he owed in the amount of $2,034.60, and for an additional sum covering the cost of making the enforcement application. The attorney for the children stated that the father never objected to any of her bills and had previously paid his 30% share of the fees billed.
The motion court granted the motion by the attorney for the children, ordering the father to pay the sum of $2,034.60 for his share of outstanding fees, as well as $1,500 for fees she incurred in making the application. It rejected the argument that this Court’s ruling in Mars v Mars gave a parent the right to challenge the fee of an attorney for the child on the ground of malpractice. In any event, it found no factual basis for the malpractice claim.
In Mars v Mars (19 AD3d at 196), this Court held that a parent may assert legal malpractice as an affirmative defense to a law guardian’s fee application “to the extent of challenging that portion of the fees attributable to advocacy, as opposed to guardianship.” Our ruling was limited by the then-prevailing view that attorneys appointed as law guardians for children in divorce cases often functioned in a role similar to a guardian ad litem, advocating for what they believed to be the best interests of the child, as opposed to what the child desired. Accepting the rule of Bluntt v O’Connor (291 AD2d 106 [4th Dept 2002], lv denied 98 NY2d 605 [2002]), which held that absent special circumstances, a parent in a visitation dispute lacks standing to bring a legal malpractice claim against a child’s court-appointed law guardian, we limited our ruling to the portion of the law guardian’s fee representing the work that consisted of advocacy rather than guardianship.
However, in 2007, the role of the law guardian was changed by a newly-promulgated rule of the Chief Judge (Rules of Chief *126 Judge [22 NYCRR] § 7.2) that renamed the position “attorney for the child,” and required those attorneys to “zealously advocate the child’s position” (§ 7.2 [d]). The rule states that the attorney for the child must “consult with and advise the child to the extent of and in a manner consistent with the child’s capacities, and have a thorough knowledge of the child’s circumstances” (§ 7.2 [d] [1]). It further requires that the attorney for the child should be directed by the child’s wishes after fully explaining the available options and making recommendations to the child, as long as the child is capable of knowing, voluntary and considered judgment (§ 7.2 [d] [2]). Only when the attorney is convinced that the child lacks the capacity for knowing, voluntary and considered judgment, or if following the child’s wishes is likely to result in a substantial risk of imminent, serious harm to the child, may the attorney advocate a position contrary to the child’s wishes, and even then the attorney must inform the court of the child’s articulated wishes if the child wants the attorney to do so (§ 7.2 [d] [3]).
Accordingly, after 2007, the distinction made by our ruling in Mars is no longer necessary in cases such as this; where the child is capable of decision-making, the task of the attorney for the child is generally solely advocacy, rather than guardianship, as long as the child is capable of knowing, voluntary and considered judgment. The portion of the Mars decision allowing a parent to raise malpractice as a defense to a fee application for that portion of the fee earned by advocacy has become applicable to the attorney’s entire fee claim. Rules of the Chief Judge (22 NYCRR) § 7.2 does not in any way vitiate the Mars ruling; on the contrary, it renders it more generally applicable.
We reaffirm the essence of the Mars v Mars ruling, namely, that a parent may assert legal malpractice as an affirmative defense to the fee claim of an attorney for the child. The attorney for the child, no less than the attorneys for the parties, is serving as a professional and must be equally accountable to professional standards. That the children cannot hire and pay for their own attorneys, leaving it to the court to make the necessary appointment, does not alter the applicable standards, or the means by which they may be raised.
The attorney for the children protests that if this type of defense is allowed generally, parents dissatisfied with the results of their custody claims will use malpractice challenges to avoid paying, resulting in a proliferation of applications for enforcement of ordered fees. She also suggests that the threat of mal *127 practice claims from disgruntled parents will have a negative impact on the effectiveness of attorneys for children, by giving those parents control over the representation of their children.
We disagree. The possibility that a parent who feels aggrieved over the developments in a custody or visitation dispute may claim malpractice as a means of avoiding payment of the attorney’s fee does not warrant granting these attorneys complete immunity against the defense of legal malpractice.
However, we emphasize that asserting such a defense will not necessitate further evidentiary proceedings in every case. Notwithstanding that the father may have standing to assert such a defense, we agree with the motion court that the father’s accusations here do not establish a prima facie showing of legal malpractice and disciplinary violations; no hearing is warranted.
The father’s claim of legal malpractice is based on his assertion that the children’s attorney ignored her professional duty by advocating the position advanced by two out of the three children, that they wanted to relocate with their mother, when the children lacked the “capacity for knowing, voluntary and considered judgment,” and that she violated the rules governing professional conduct in matrimonial matters. More specifically, he argues that the children’s attorney “ignored abundant evidence that her clients’ judgment was not voluntary and in fact was manipulated by their mother,” including the forensic expert’s observations and conclusions that the mother controlled and manipulated the children, and purposely alienated the children from him. He further argues that the attorney failed to consider post-relocation events, engaged in improper ex parte communications with the court, and assisted the mother in reducing his visitation.
As the motion court found, the record reflects that the attorney for the children properly advocated the positions of the children, representing them zealously, competently, and professionally. There is no merit to the father’s contention that the children’s expressed positions regarding the proposed move to New Jersey were not voluntary. Nothing in the record establishes that the children lacked the capacity for voluntary judgment as required by Rules of the Chief Judge (22 NYCRR) § 7.2. Nor is there any merit to the accusation that the attorney for the children ignored the forensic expert’s findings, or other evidence of alienation. The rule actually prohibits the attorney for the child from advocating a position contrary to the child’s stated position unless the attorney is “convinced” that “the *128 child lacks the capacity for knowing, voluntary and considered judgment” (§ 7.2 [d] [3]). There is no evidence that the children lacked the requisite capacity. While the forensic expert indicated his view that the mother had engaged in behavior that alienated the children from their father, he also found that the father had estranged himself from the children by his own actions. Moreover, the court held a Lincoln hearing at which it heard directly from the children, and determined that the children were not rehearsed or coached, and that they desired to move to New Jersey. Evidence of overreaching or bad behavior by one parent that may influence a child caught in the middle of a custody dispute does not automatically require the child’s attorney to be “convinced” that the child’s stated position is involuntary.
The cross-examination of the father by the attorney for the children did not improperly undermine the forensic expert’s testimony. Indeed, her role as the children’s advocate required her to do so. Regardless of whether the children’s position aligned with the mother’s, it was neither malpractice nor a violation of disciplinary rules for her to advocate for that position. Nor was there anything inappropriate about the attorney for the children questioning the father at the relocation trial about the various schooling options. Her examination of him was essential to her role as an advocate for the children; its purpose was not to be degrading.
There is no basis for the father’s claim that the motion court’s decision was dictated, or inordinately affected, by the attorney for the children, nor anything substantiating the claim that the attorney for the children committed disciplinary violations or engaged in improper ex parte communications with the court, or that such communications influenced the court.
Finally, the father never objected to any of the bills presented by the attorney for the children despite the fact that they were in his possession for a significant amount of time (see Pedreira v Pedreira, 34 AD3d 225 [1st Dept 2006]). The court therefore acted properly in ordering him to pay the fees under an account stated theory (see Shaw v Silver, 95 AD3d 416, 416 [1st Dept 2012]).
Turning to the remaining issues raised: we note that the November 9, 2010 interim order, which directed the mother to ensure that two of the children attend Catholic religion classes, was superseded by the August 26, 2011 order which incorporated a March 7, 2011 order and only required the mother to cooper *129 ate in having the parties’ daughter participate in all activities leading up to her first holy communion. There is no dispute that the parties’ daughter attended the classes and had her first communion, and thus this issue has been rendered academic.
To the extent the father challenges the modification of visitation, we find that the motion court did not abuse its discretion in doing so and considered the best interests of the children. Matters of custody and visitation are within the sound discretion of the trial court (Sequeira v Sequeira, 105 AD3d 504 [1st Dept 2013], lv denied 21 NY3d 1052 [2013]; Matter of Thompson v Yu-Thompson, 41 AD3d 487 [2d Dept 2007]), and its findings should be accorded great deference on appeal. In modifying the interim visitation schedule, which it expressly stated it would revisit, the motion court properly considered the children’s schedule, including various extracurricular activities, which require them to be in New Jersey, and made a determination that is in their best interest while also ensuring that the father has significant visitation.
To the extent the father seeks enforcement of his visitation rights, any enforcement or contempt applications must be brought in Supreme Court.
To the extent the father appeals from the denial of his motion to reargue various orders concerning add-on expenses and cost-of-living adjustment (COLA) increases, no appeal lies from an order denying reargument (see Stratakis v Ryjov, 66 AD3d 411 [1st Dept 2009]). To the extent the father appeals from the denial of his renewal motion concerning add-on expenses and COLA increases, the motion court properly denied renewal as no new facts were offered that were not previously presented (CPLR 2221).
In any event, while there is no dispute that the parties’ 2005 agreement requires them to equally share the cost of add-on expenses, in its September 16, 2011 order the motion court properly set down any unresolved add-on expenses for a hearing, which was to take place on December 5, 2011. Thus, the court did not err in separately granting certain add-on expenses to the mother in that same order. Indeed, in two separate orders issued on August 23, 2010, each party was ordered to pay the other for certain add-on expenses. Given that the court specifically planned to deal with these expenses following a hearing, to the extent that these add-on expenses were not resolved, the father’s recourse is to make a motion in Supreme Court.
As for the cost of living increases, the father claims that this issue was not properly before the court because there was no *130 pending motion for such arrears. However, the decision and order granting such increases states that it was resolving motion sequence numbers 11 and 12, which are not contained in the record. Moreover, according to the order of the motion court, in those motions the mother requested COLA increases and arrears.
There is also no merit to the father’s contention that the parties’ agreement regarding COLA increases was vague and unenforceable. The relevant clause in the parties’ 2005 agreement clearly designated 2005 as the base year, thus indicating that increases would begin in 2006. The clause is also clear that basic child support would be subject to an annual cost of living adjustment, but that the maximum adjustment would be 3% in any given year.
Finally, while the court initially mistakenly held that the COLA increases were subject to the annual $200,000 cap, it properly amended its earlier order by striking any reference to the cap. While the court in 2005 had capped the parties’ income at $200,000 for the purpose of calculating basic child support, there was no cap placed on COLA increases.
Accordingly, the order of the Supreme Court, New York County (Matthew F. Cooper, J.), entered August 30, 2011, which, to the extent appealed from as limited by the briefs, set forth a parenting access schedule in accordance with an interim March 7, 2011 order and the parties’ May 11, 2011 so-ordered stipulation and directed plaintiff to cooperate in having the parties’ daughter participate in all activities leading up to her first holy communion, should be affirmed, without costs. The order of the same court and Justice, entered on or about March 23, 2012, which, to the extent appealable, denied defendant’s motion to renew and reargue orders dated August 23, 2010, September 16, 2011 and September 26, 2011, which, inter alia, awarded plaintiff a cost of living increase in child support, and directed defendant to pay support arrears and add-on expenses, should be affirmed, without costs. The order of the same court and Justice, entered March 26, 2012, which granted the motion of the attorney for the children to direct defendant to pay outstanding fees, and awarded the attorney for the children additional fees for making the application, should be affirmed, without costs.
Gonzalez, EJ., Tom, Manzanet-Daniels and Gische, JJ., concur.
Order, Supreme Court, New York County, entered August 30, 2011, affirmed, without costs. Order, same court and Justice, *131 entered on or about March 23, 2012, affirmed, without costs. Order, same court and Justice, entered March 26, 2012, affirmed, without costs.